2018 IL App (2d) 170169
No. 2-17-0169
Opinion filed January 26, 2018

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| LAWANDA FREEMAN, as Special Administrator of the Estate of Terrance Freeman, Deceased | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | No. 16-L-116 |
| v. | ) | |
| | ) | |
| GAYLE R. CRAYS, M.D., | ) | Honorable |
| | ) | J. Edward Prochaska, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Schostok and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal arises out of a wrongful-death action brought by plaintiff, Lawanda Freeman, as special administrator of the estate of her deceased husband, Terrance Freeman, against defendant, Gayle R. Crays, M.D. Plaintiff alleged that defendant's negligent treatment of Terrance's cardiovascular disease was the proximate cause of Terrance's death. Just before the trial was set to begin, the trial court ruled that plaintiff's only medical expert witness was unqualified to offer any opinions on the issue of causation, thus creating an evidentiary gap in plaintiff's case. In response to the trial court's ruling, plaintiff moved to voluntarily dismiss her complaint. The trial court granted the voluntary dismissal in case No. 12-L-348 without

prejudice. Shortly thereafter, plaintiff refiled her complaint in case No. 16-L-116. Upon learning that plaintiff intended to disclose an additional medical expert witness to offer opinions on the issue of causation, defendant moved to adopt the rulings from case No. 12-L-348 and to bar any testimony from plaintiff's newly disclosed expert witness pursuant to Illinois Supreme Court Rule 219(e) (eff. July 1, 2002). After the trial court granted defendant's motion, defendant moved for summary judgment based on plaintiff's inability to satisfy the element of causation. The trial court granted defendant's motion for summary judgment and plaintiff now appeals. Plaintiff contends that (1) the trial court abused its discretion by barring her original medical expert witness from offering any opinions on the issue of causation and (2) the trial court improperly applied Rule 219(e) in case No. 16-L-116. We affirm in part, reverse in part, and remand the cause with directions for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3      We note that the record from case No. 12-L-348 is not included in the record on appeal. Our recitation of the facts from that case is therefore derived from the orders and reports of proceedings that are attached to the pleadings in case No. 16-L-116.[1]

¶ 4      The record reflects that Terrance suffered a cardiac arrest and died suddenly on November 23, 2009, at the age of 37. According to plaintiff's complaint, defendant was

---

[1] We note that the record on appeal contains a letter from plaintiff's appellate counsel to the clerk of the circuit court of Winnebago County. The letter contains a request that the record on appeal include all filings from both cases. When asked about this discrepancy at oral argument, plaintiff's appellate counsel implied that he never received the record from case No. 12-L-348. It was the responsibility of appellate counsel to follow up and secure said record if he wanted this court to take it into consideration in our ruling.

practicing in the field of family medicine when she provided Terrance with medical care and prescribed him medication for the treatment of hypertension. Plaintiff generally alleged that defendant had breached the standard of care applicable to family practitioners by failing to diagnose Terrance's enlarged heart or his severe coronary artery disease and by failing to refer him to a cardiologist. These allegations were supported by the opinion letter of Finley W. Brown Jr., M.D., a board certified family practitioner.

¶ 5                                     A. No. 12-L-348

¶ 6      As the case proceeded toward trial, plaintiff determined that Dr. Brown would be her only medical expert witness. During the final pretrial conference, conducted on March 9, 2016, the trial court ruled on numerous motions *in limine* filed by both parties. Two of these rulings are relevant here. First, the trial court granted plaintiff's motion *in limine* No. 14, which sought to bar testimony from any undisclosed witnesses. Second, defendant's motion *in limine* No. 16 sought to bar Dr. Brown from offering any opinions as to the standard of care for a cardiologist or as to any treatment modalities that a cardiologist would have recommended. When plaintiff's counsel made no objection to the motion, the following colloquy took place:

"THE COURT: *** 16, bar Plaintiff's expert Dr. Brown from offering opinions to what a reasonably careful cardiologist would have done. You have no objection to that?

MR. GUNZBURG [(PLAINTIFF'S COUNSEL)]: Right, because [Dr. Brown] is not a cardiologist, so—

THE COURT: So tell me again what he's going to say on proximate cause? He can't say what a reasonably careful cardiologist would do. What's he going to say?

MR. GUNZBURG: Well, he's going to say that, you know, had the blood pressure medications—the blood pressure medications should have been tweaked, he

should have been treated with cholesterol reducing medications, he should have been referred to a cardiologist, he should have—

THE COURT: And had all of those things been done, he would still be alive today?

MR. GUNZBURG: Yes.

THE COURT: Without going into what the cardiologist would have done?

MR. GUNZBURG: That's right. I mean, that—what he's saying is you could have ordered an echo, you could have ordered an EKG, or you could have just avoided that and sent him straight to a cardiologist. Now, Dr.—you know, Dr. Sorrentino [(the defense's cardiology expert)] is going to testify to—

THE COURT: Right, what a cardiologist would or wouldn't have done.

MR. GUNZBURG: Right.

THE COURT: But you don't have a cardiologist to do that?

MR. GUNZBURG: That's right.

THE COURT: Okay.

MR. GUSTAFSON [(DEFENSE COUNSEL)]: If I can weigh in just for a moment, the comment that meds should have been tweaked is not a disclosed opinion from Dr. Brown. I guess we can fight that at another time. Maybe the elephant in the room here is that all of the opinions that Dr. Brown has given point to [a] cardiologist, and they don't have a cardiologist, so I'm—

THE COURT: I haven't seen any motions for summary judgment filed based on defendant's—the plaintiff's inability to prove up a case. You know, that would have

possibly been something to raise at the motion *in limine* level, too. I'm just saying—that's why I'm asking these questions.

MR. GUSTAFSON: No, I understand.

THE COURT: Because I—you know, you've got a cardiologist and he doesn't.

MR. GUSTAFSON: Yes.

THE COURT: So—

MR. GUSTAFSON: Judge, can I ask: Are we granted leave to file that kind of motion this late?

THE COURT: Well, probably not. I mean, it is, you know, the Wednesday before trial, but your motion *in limine* to bar Dr. Brown from commenting on what a reasonably careful cardiologist would have done had [Terrance] been referred is granted, so he's not going to testify as to cardiology standard of care opinions.

MR. GUSTAFSON: Or treatment modalities?

THE COURT: Or treatment modalities that the cardiologist would have done."

¶ 7      Dr. Brown's evidence deposition was conducted on March 11, 2016, just two days after the final pretrial conference. Dr. Brown testified that he had a duty to refer patients to specialists for problems that were outside of his "skill set" as a family practitioner. He explained, "for instance, if they have cardiovascular issues, I can do the work-up, I can try to make a diagnosis. But 100 percent of the time, I need to call in a cardiologist to complete the evaluation of the patient and—and often, to complete the treatment of the patient." After reviewing Terrance's autopsy report, Dr. Brown testified that Terrance had suffered from cardiomegaly, or an enlarged heart, and severe coronary artery disease. This meant that Terrance had an increased risk of sudden cardiac death. Despite the trial court's ruling on defendant's motion *in limine* No. 16,

plaintiff's counsel asked Dr. Brown whether defendant's failure to refer Terrance to a cardiologist deprived him of a chance to survive. Dr. Brown answered that it did, explaining that a cardiologist would have taken steps to improve Terrance's cardiac circulation. Dr. Brown admitted that he was not certain how a cardiologist would have treated Terrance. However, he stated that he had worked closely with cardiologists and was familiar with the different treatments that might have been administered. These included bypass surgery, angioplasty, stent placement, or medications for lowering blood fats. Dr. Brown added that he had taken a special interest in the field of advanced lipidology. He had attended several lectures and completed a two-day course. These experiences made him "quite skilled" at evaluating and treating patients with high blood fats. Dr. Brown acknowledged, however, that it was still necessary for a cardiologist to determine whether it was safe to administer lipid-lowering drugs.

¶ 8    During the course of Dr. Brown's evidence deposition, defendant objected several times on the basis that plaintiff's questions violated the restrictions set forth in defendant's motion *in limine* No. 16. Many of these objections were sustained when the parties appeared in court on March 14, 2016. As a result, Dr. Brown was barred from opining that a cardiologist would have prevented Terrance's sudden death, through the use of lipid-lowering medications or otherwise. In so ruling, the trial court noted Dr. Brown's opinion at one point during the deposition that a cardiologist would have initiated lipid-lowering therapy to improve Terrance's circulation, thereby preventing his sudden death. However, Dr. Brown repeatedly admitted elsewhere during the deposition that he could not say precisely what a cardiologist would have done. The trial court commented in relevant part:

    "I've read and reread these pages over and over again, and I've come to the

        conclusion that, as the defendants already stated and argued, all roads in this case lead to

a cardiologist. There is simply no way for [Dr. Brown], a family doctor, to testify as to causation without the qualified testimony of a cardiologist because every single thing that he testifies is a deviation of the standard of care for [defendant] results in a referral to a cardiologist. Every single one. Even the—you know, the treatment with lipid lowering drugs would result in a referral to a cardiologist."

¶ 9    The next day, on March 15, 2016, plaintiff moved to voluntarily dismiss her complaint without prejudice. As averred in defendant's brief, plaintiff's motion was made after the jury was selected, but before it was sworn. The trial court granted plaintiff's motion to voluntarily dismiss her complaint, without prejudice, and "with the parties to bear their own costs." Defendant neither objected to the voluntary dismissal nor requested that plaintiff be sanctioned pursuant to Rule 219(e).

¶ 10                              B. No. 16-L-116

¶ 11    Plaintiff refiled her complaint on March 22, 2016. When it was revealed that plaintiff intended to disclose an expert witness in the field of cardiology, defendant responded by filing a motion to adopt the discovery orders and *in limine* rulings from case No. 12-L-348. This included a request that the trial court bar additional expert witness disclosures pursuant to Rule 219(e). Defendant argued that plaintiff, "in refiling and in clear violation of Rule 219(e), is attempting to cure her unreasonable noncompliance with discovery rules (untimely opinions and disregard for the motion *in limine* ruling) and avoid the Court's barring of causation opinions by attempting to disclose a new expert witness, a cardiologist." In that regard, defendant argued that the issue was controlled by *Jones v. Chicago Cycle Center*, 391 Ill. App. 3d 101 (2009). In response, plaintiff argued that defendant was asking for an improper sanction under Rule 219(e), as she had not violated any discovery orders or missed any discovery deadlines in case No.

12-L-348. Plaintiff also argued that the case at bar was distinguishable from *Jones*, as *Jones* involved factual findings of unreasonable noncompliance and misconduct. See *id*. at 115.

¶ 12    On September 12, 2016, after hearing arguments, the trial court granted defendant's motion to adopt the discovery orders and *in limine* rulings from case No. 12-L-348. These included the ruling on plaintiff's motion *in limine* No. 14, which effectively barred any testimony from plaintiff's newly disclosed cardiologist. In announcing its ruling, the trial court stated that plaintiff had an "absolute right" to voluntarily dismiss and refile her case. The trial court also agreed with plaintiff that there had been no discovery sanctions in case No. 12-L-348. However, the trial court agreed with defendant that this case was similar to *Jones*, stating, "[i]t is exactly what we have here." After commenting that plaintiff was clearly attempting to cure the evidentiary gap created by its adverse rulings with regard to Dr. Brown, the trial court concluded:

> "When I consider Supreme Court Rule 219(e), I believe this is exactly the type of refiling that should be barred under Supreme Court Rule 219(e). All the rulings were made, the cards were on the table, the plaintiff was facing a very likely motion for directed verdict, and they voluntarily dismissed to avoid that. They voluntarily dismissed the case to avoid the consequences of the Court's rulings on the proximate cause issue."

Although the trial court ruled that plaintiff was barred from presenting an expert witness in the field of cardiology, it noted that plaintiff was free to seek a reconsideration of the rulings with regard to the scope of Dr. Brown's testimony.

¶ 13    Defendant later moved for summary judgment, arguing that the lack of proximate causation testimony rendered plaintiff unable to prove an essential element of her case. In turn,

plaintiff filed a motion to reconsider the trial court's rulings that barred Dr. Brown from offering causation opinions.

¶ 14　On January 30, 2017, following arguments, the trial court denied plaintiff's motion to reconsider, granted defendant's motion for summary judgment, and dismissed plaintiff's complaint with prejudice. Plaintiff filed a timely notice of appeal identifying the orders entered on September 12, 2016, and January 30, 2017.

¶ 15　　　　　　　　　　　　　II. ANALYSIS

¶ 16　Plaintiff raises two issues on appeal. First, she contends that the trial court abused its discretion by barring Dr. Brown from offering any opinions regarding the proximate cause of Terrance's death. Second, she contends that the trial court "misconstrued and misapplied" Rule 219(e) by barring her from disclosing an expert witness in the field of cardiology in case No. 16-L-116. We will address these issues in turn.

¶ 17　　　　　　　　　　　　　A. Dr. Brown

¶ 18　We begin with the trial court's ruling that Dr. Brown was unqualified to opine that defendant's alleged negligence proximately caused Terrance's death. "An expert's opinion is only as valid as the bases and reasons for the opinion." *Soto v. Gaytan*, 313 Ill. App. 3d 137, 146 (2000); see Ill. R. Evid. 703 (eff. Jan. 1, 2011). For expert testimony to be admissible, the proffered expert must be qualified by knowledge, skill, experience, training, or education and the testimony must assist the trier of fact in understanding the evidence. *Snelson v. Kamm*, 204 Ill. 2d 1, 24 (2003). There is no requirement of formal academic training or specific degrees for a witness to qualify as an expert; rather, practical experience in a particular field may suffice. *Thompson v. Gordon*, 221 Ill. 2d 414, 428-29 (2006). However, "[t]he proponent must lay an adequate foundation establishing the reliability of the information on which the expert's opinion is

based." *Caldwell v. Advocate Condell Medical Center*, 2017 IL App (2d) 160456, ¶ 52. If an expert's opinion is based on varying or uncertain factors to the extent that the expert is required to guess or surmise, the opinion should be barred as speculative and unreliable. *Id.*

¶ 19    It is well settled that the decision whether to admit expert testimony is within the sound discretion of the trial court. *Thompson*, 221 Ill. 2d at 428; *Snelson*, 204 Ill. 2d at 24. "A trial court abuses its discretion only where no reasonable person would take the position adopted by the court." *Colburn v. Mario Tricoci Hair Salons & Day Spas, Inc.*, 2012 IL App (2d) 110624, ¶ 22.

¶ 20    Here, plaintiff first notes that she was proceeding under the "lost chance" theory of recovery. On that basis, she argues that the trial court applied an erroneously high threshold to the admission of Dr. Brown's causation opinions. We disagree with plaintiff.

¶ 21    A plaintiff in a medical malpractice case must prove (1) the standard of care against which the medical professional's conduct must be measured, (2) that the defendant was negligent by failing to comply with that standard, and (3) that the defendant's negligence proximately caused the injuries for which the plaintiff seeks redress. *Walton v. Dirkes*, 388 Ill. App. 3d 58, 60 (2009). "The proximate cause element of a medical malpractice case must be established by expert testimony to a reasonable degree of medical certainty." *Krivanec v. Abramowitz*, 366 Ill. App. 3d 350, 356-57 (2006).

¶ 22    In Illinois, a plaintiff in a medical malpractice action may proceed under the lost-chance theory of recovery to satisfy the proximate cause element. *Perkey v. Portes-Jarol*, 2013 IL App (2d) 120470, ¶ 61. This theory applies where medical providers are alleged to have negligently deprived the plaintiff of a chance to survive or recover from a health problem or where the alleged malpractice has lessened the effectiveness of treatment or increased the risk of an unfavorable outcome to the plaintiff. *Hemminger v. LeMay*, 2014 IL App (3d) 120392, ¶ 16. Accordingly,

plaintiffs seeking to recover for medical malpractice are not required to prove that they would have enjoyed a greater than 50% chance of survival or recovery absent the alleged malpractice. *Holton v. Memorial Hospital*, 176 Ill. 2d 95, 119 (1997).

¶ 23    Plaintiff argues that, because she was proceeding under the lost-chance theory of recovery, Dr. Brown was not required to have sufficient knowledge of the precise treatment that a cardiologist would have employed to obtain a better outcome for Terrance. According to plaintiff, the trial court incorrectly required Dr. Brown to establish what a cardiologist *would* have done for Terrance and how that treatment *would* have affected Terrance. Plaintiff's reasoning is taken from *Hemminger*, where the appellate court held that the plaintiff (who was proceeding under the lost-chance theory of recovery) "only needed to show that [the defendant doctor's] negligence deprived [the patient] of the opportunity to undergo treatment that *could* have been more effective if given earlier, not that such treatment *would* have been effective." (Emphases in original.) *Hemminger*, 2014 IL App (3d) 120392, ¶ 23.

¶ 24    Here, plaintiff attempts a distorted application of the reasoning in *Hemminger*. Plaintiff insinuates that, because she did not have to prove that Terrance *would* have enjoyed a greater than 50% chance of survival absent defendant's alleged negligence, the bar was lowered for the foundational requirements underlying Dr. Brown's causation opinions. However, our supreme court has held that the lost-chance theory of recovery "does not relax or lower a plaintiff's burden of proving causation." *Holton*, 176 Ill. 2d at 120. To the contrary, the requirement that causation must be shown to a reasonable degree of medical certainty "conforms to traditional principles of proximate cause." *Id.* at 115. Therefore, "[t]o the extent a plaintiff's chance of recovery or survival is lessened by the malpractice, he or she should be able to present evidence to a jury that the

defendant's malpractice, *to a reasonable degree of medical certainty*, proximately caused the increased risk of harm or lost chance of recovery." (Emphasis added.) *Id.* at 119.

¶ 25    In *Hemminger*, the plaintiff's medical expert opined to a reasonable degree of medical certainty as to the patient's lost chance of recovery from cervical cancer. Specifically, the expert testified that the patient's five-year survival rate had dropped to 32%—a reduction between 26% and 58%—by the time she was diagnosed with stage 3B cervical cancer. *Hemminger*, 2014 IL App (3d) 120392, ¶ 22. The expert also identified the "specific treatment procedures" that were delayed by the defendant doctor's failure to diagnose the patient earlier. *Id.* ¶ 24. The appellate court held that, pursuant to *Holton*, these opinions were sufficient to establish a *prima facie* case of causation under a lost-chance theory of recovery. *Id.*

¶ 26    Contrary to plaintiff's argument in this case, *Hemminger* did not signal that a medical expert's testimony under a lost-chance theory of recovery is subject to a lower threshold for admissibility. The door is not opened for speculation as to whether a defendant doctor's negligence deprived the patient of the opportunity to undergo treatment that could have been effective if given earlier. See *id.* ¶ 23. Rather, such testimony must still be offered to a reasonable degree of medical certainty. *Holton*, 176 Ill. 2d at 115-20. We will apply that threshold here as we address the foundation for Dr. Brown's causation opinions.

¶ 27    Moving on, despite the acknowledgment by plaintiff's counsel that Dr. Brown was unqualified to testify to the standard of care for a cardiologist, plaintiff now attempts to argue otherwise. She repeatedly emphasizes Dr. Brown's testimony that he worked closely with cardiologists in his own practice and that he was familiar the methods, procedures, and treatments that a cardiologist might have recommended for Terrance. Plaintiff notes that "[w]hether the expert is qualified to testify is not dependent on whether he is a member of the same

specialty or subspecialty as the defendant but, rather, whether the allegations of negligence concern matters within his knowledge and observation." *Jones v. O'Young*, 154 Ill. 2d 39, 43 (1992). Plaintiff cites cases applying this principle in support of her argument that the trial court abused its discretion by barring Dr. Brown's causation opinions.

¶ 28    In *Gill v. Foster*, 157 Ill. 2d 304, 315-16 (1993), the trial court barred the plaintiff's expert, a general surgeon, from testifying that the defendant, a radiologist, had deviated from the standard of care. This ruling was based on the general surgeon's admission that he had relied on radiologists' interpretations of X-rays in complicated cases. *Id.* at 317. In concluding that the trial court abused its discretion, our supreme court held, "[t]he fact that [the general surgeon] would rely on a radiologist's opinion does not indicate that he lacks the qualifications to testify. The fact that [the general surgeon] relied on the opinion of radiologists in some cases goes only to the weight of his opinion, not to the admissibility of it." *Id.*

¶ 29    In *Silverstein v. Brander*, 317 Ill. App. 3d 1000, 1003 (2000), the trial court ruled that the plaintiff's medical expert, an internist, was unqualified to testify that the defendant, a physiatrist, had violated the standard of care in managing the plaintiff during his rehabilitation from a hip replacement. The appellate court reversed the trial court's ruling, first observing that the internist had criticized the physiatrist's medical management of the plaintiff, rather than the physiatrist's work on the plaintiff's physical therapy. This was noteworthy because the internist testified that he had worked on the medical management of more than 100 patients while they underwent physical rehabilitation following hip-replacement surgery. *Id.* at 1007. On that basis, the appellate court directed the trial court to allow the internist to testify on remand as to the standards governing the medical management of postoperative patients. *Id.* at 1008.

¶ 30    Finally, in *Ayala v. Murad*, 367 Ill. App. 3d 591, 592 (2006), the plaintiff alleged that the defendant pathologist had failed to properly diagnose the patient's tumor. The trial court barred one of the plaintiff's medical experts, an obstetrician and gynecologist, from offering opinions as to what the course of treatment would have been for the patient and how the patient would have responded had she received the treatment sooner. *Id.* at 600. Relying on *Gill* and *Silverstein*, the appellate court reversed the trial court's ruling, noting that the plaintiff's expert was a licensed doctor with extensive experience in the management and treatment of cancer patients. Specifically, the plaintiff's expert had testified that he collaborated on a weekly basis with the hospital's medical oncologists, was familiar with the standard course of treatment for ovarian cancer patients, monitored his patients' reactions to cancer therapies, would question a medical oncologist if an unusual course of therapy were suggested for one of his patients, and would be a joint decision-maker in deciding whether something experimental, or a second line of therapy, should be administered to a cancer patient. *Id*.

¶ 31    We agree with defendant that these cases are distinguishable from the case at bar. Of course, the first point of distinction is plaintiff's initial acknowledgment that Dr. Brown was unqualified to testify to a cardiologist's standard of care. But aside from that, unlike Dr. Brown, the experts in the cases discussed above provided adequate foundations establishing the reliability of the information on which their opinions were based. See *Caldwell*, 2017 IL App (2d) 160456, ¶ 52.

¶ 32    For instance, the general surgeon in *Gill* testified that he had training and experience in interpreting X-rays, that he had instructed medical students on the subject of radiology, and that he was familiar with the standard of care for a reasonably qualified radiologist. *Gill*, 157 Ill. 2d at 315-16. In *Silverstein*, the issue was whether the defendant physiatrist had negligently prescribed

the drug Indocin, which allegedly caused the plaintiff to develop an ulcer. *Silverstein*, 317 Ill. App. 3d at 1002. The plaintiff's expert, an internist, testified that he had considerable experience with Indocin and that all physicians should recognize that a patient with a history of peptic ulcers is especially vulnerable to the side effects of Indocin. *Id.* at 1007-08. The plaintiff's expert in *Ayala*, an obstetrician and gynecologist, testified that the standard primary treatment for ovarian cancer consisted of two specific drugs and that the normal cycle for administration of the drugs would initially be six treatments at three-week intervals. *Ayala*, 367 Ill. App. 3d at 601-02.

¶ 33      Here, Dr. Brown testified that he referred 100% of his patients with cardiovascular issues to a cardiologist. He explained, "I don't have the skill, or the training, or the knowledge to complete a detailed and comprehensive cardiac work-up." Although Dr. Brown testified that he was generally aware of the treatments a cardiologist might have recommended for Terrance—such as bypass surgery, angioplasty, stent placement, or lipid-lowering medications—he made it clear that the choice of which procedure to implement is always left to a cardiologist. Dr. Brown admitted that he would need to consult with a cardiologist even to determine whether it was safe for him to administer lipid-lowering drugs. Thus, although Dr. Brown might have had some degree of familiarity with the standard of care for a cardiologist, he was still unable to testify to a reasonable degree of medical certainty as to *how* a cardiologist would have *effectively* treated Terrance. In this regard, Dr. Brown's testimony was similar to that of the medical experts in the cases cited by defendant, where the evidence was insufficient to establish that a doctor's negligence was the proximate cause of a patient's injury.

¶ 34      In *Aguilera v. Mount Sinai Hospital Medical Center*, 293 Ill. App. 3d 967 (1997), the appellate court affirmed the trial court's entry of a judgment notwithstanding the verdict for the defendant, based on a gap in the evidence of proximate cause. Several hours after being admitted

to the emergency room, the patient lapsed into a coma and eventually died. The plaintiff alleged that the emergency-room physician had deviated from the standard of care by failing to order an earlier CT scan. To that end, the plaintiff's expert witnesses, a physician and a neurologist, both opined that an earlier CT scan would have led to a surgical intervention that would likely have saved the patient's life. However, both experts admitted that they would have deferred to a neurosurgeon to decide whether surgical intervention was appropriate. *Id.* at 968-70. In affirming the trial court's ruling, the appellate court noted that the only two neurosurgeons who testified had agreed that surgery would not have been appropriate or ordered, because the patient's bleed was deep within his brain. Thus, "[w]ithout supporting testimony from a neurosurgeon, plaintiff's experts' testimony was insufficient to show that neurosurgery, much less effective neurosurgery, should have occurred absent defendants' negligence." *Id.* at 975. This created a gap in the evidence of proximate cause that was fatal to the plaintiff's case. *Id.*

¶ 35    In *Weidenbeck v Searle*, 385 Ill. App. 3d 289, 290 (2008), the trial court granted the defendant's motion for summary judgment after finding that there was insufficient evidence of proximate cause for the case to proceed to a trial. The issue there was whether an urgent-care doctor had violated the standard of care by failing to order a CT scan or neurological consultation. The plaintiff's medical expert, a family physician, admitted that he could not interpret the standard of care for a neurologist or neurosurgeon. However, the expert nonetheless claimed to have knowledge of what a neurologist or neurosurgeon would have done for a patient presenting similar symptoms.[2] He testified during a deposition that the urgent-care doctor's failures had "directly caused the delay in diagnosis and all the pain, suffering, and neurological

---

[2] Plaintiff acknowledges in her reply brief that Dr. Brown was also the plaintiff's medical expert in *Wiedenbeck.*

disease that poor [decedent] suffered." (Internal quotation marks omitted.) *Id.* at 295. Citing *Aguilera*, the appellate court affirmed the trial court's ruling, finding that the expert's testimony was not offered to a reasonable degree of medical certainty to satisfy the element of proximate cause. *Id.* at 299.

¶ 36    We agree with defendant that the facts in this case warrant an outcome similar to those reached in *Aguilera* and *Weidenbeck*. "Proximate cause in a medical malpractice case must be established by expert testimony to a reasonable degree of medical certainty, and the causal connection must not be contingent, speculative, or merely possible." *Ayala*, 367 Ill. App. 3d at 601. Like the opinions at issue in *Aguilera* and *Weidenbeck*, Dr. Brown's causation opinions in this case were contingent and speculative. It was not enough for Dr. Brown to simply testify that, if defendant had referred Terrance to a cardiologist, a cardiologist could have administered a treatment plan that could have prolonged Terrance's life. Because Dr. Brown could not testify to a reasonable degree of medical certainty as to how a cardiologist could have effectively treated Terrance, he lacked the necessary foundation to offer an opinion that defendant's negligence was the proximate cause of Terrance's death. Therefore, the trial court did not abuse its discretion in barring Dr. Brown's causation opinions.

¶ 37                              B. Rule 219(e)

¶ 38    We now turn to the trial court's decision to bar plaintiff from disclosing an expert witness in the field of cardiology in case No. 16-L-116. The trial court's ruling was based on its application of Rule 219(e), which prevents discovery abuses by encouraging compliance with the entire discovery process. *Jones*, 391 Ill. App. 3d at 111. Rather than acting to bar a plaintiff's statutory right to a voluntary dismissal, Rule 219(e) curtails a plaintiff's use of the voluntary

dismissal as a dilatory tactic. *Scattered Corp. v. Midwest Clearing Corp.*, 299 Ill. App. 3d 653, 660 (1998).

¶ 39    As with other pretrial discovery rulings, we review a trial court's decision to bar evidence in a refiled action for an abuse of discretion. *Hayward v. C.H. Robinson Co.*, 2014 IL App (3d) 130530, ¶ 45; *Smith v. P.A.C.E.*, 323 Ill. App. 3d 1067, 1075 (2001).

¶ 40    Rule 219 is titled "Consequences of Refusal to Comply with Rules or Order Relating to Discovery or Pretrial Conferences." Ill. S. Ct. R. 219 (eff. July 1, 2002). Rule 219(e) is titled "Voluntary Dismissals and Prior Litigation." Rule 219(e) provides as follows:

"A party shall not be permitted to avoid compliance with discovery deadlines, orders or applicable rules by voluntarily dismissing a lawsuit. In establishing discovery deadlines and ruling on permissible discovery and testimony, the court shall consider discovery undertaken (or the absence of same), any misconduct, and orders entered in prior litigation involving a party. The court may, in addition to the assessment of costs, require the party voluntarily dismissing a claim to pay an opposing party or parties reasonable expenses incurred in defending the action including but not limited to discovery expenses, expert witness fees, reproduction costs, travel expenses, postage, and phone charges." Ill. S. Ct. R. 219(e) (eff. July 1, 2002).

The relevant committee comment provides:

"Paragraph (e) addresses the use of voluntary dismissals to avoid compliance with discovery rules or deadlines, or to avoid the consequences of discovery failures, or orders barring witnesses or evidence. This paragraph does not change existing law regarding the right of a party to seek or obtain a voluntary dismissal. However, this paragraph does clearly dictate that when a case is refiled, the court shall consider the prior litigation in

determining what discovery will be permitted, and what witnesses and evidence may be barred. The consequences of noncompliance with discovery deadlines, rules or orders cannot be eliminated by taking a voluntary dismissal. Paragraph (e) further authorizes the court to require the party taking the dismissal to pay the out-of-pocket expenses actually incurred by the adverse party or parties. *** Paragraph (e) does not provide for the payment of attorney fees when an action is voluntarily dismissed." Ill. S. Ct. R. 219(e), Committee Comments (adopted June 1, 1995).

¶ 41    Here, plaintiff first argues that defendant's motion to adopt the discovery orders and *in limine* rulings from case No. 12-L-348 constituted an untimely attack on the propriety of the trial court's order granting her motion to voluntarily dismiss her complaint. She notes that defendant never requested any Rule 219(e) sanctions when she moved for a voluntary dismissal. Furthermore, once her motion was granted, the voluntary dismissal was final and appealable by defendant. See *Kahle v. John Deere Co.*, 104 Ill. 2d 302, 307 (1984). According to plaintiff, defendant could have properly requested Rule 219(e) sanctions by moving to vacate the voluntary dismissal within 30 days. Because defendant took no such action, plaintiff argues that the trial court lacked jurisdiction to review the propriety of the voluntary dismissal when the discovery issue arose in case No. 16-L-116. This argument has no merit.

¶ 42    In *Morrison v. Wagner*, 191 Ill. 2d 162 (2000), our supreme court held that Rule 219(e) "prevents voluntary dismissals from being used as an artifice for evading discovery requirements through two entirely different mechanisms." *Id*. at 166. First, the rule enhances the monetary burden associated with voluntary dismissals by providing that the party seeking dismissal may be required to pay the opposing party or parties their reasonable expenses incurred in defending the action. *Id.* at 166-67. Second, the rule discourages the abuse of voluntary dismissals by attaching

additional adverse consequences later, when the party who obtained the dismissal seeks to refile. "When a case is refiled, the rule *requires* the court to consider the prior litigation in determining what discovery will be permitted, and what witnesses and evidence may be barred." (Emphasis added.) *Id.* at 167.

¶ 43    Here, the trial court was not reviewing the propriety of the voluntary dismissal in case No. 12-L-348 when it considered defendant's motion to adopt the prior discovery orders and *in limine* rulings. Regardless of whether defendant filed any such motion, Rule 219(e) required the trial court to consider the prior litigation in determining what discovery would be permitted and whether any witnesses or evidence would be barred in case No. 16-L-116. *Id.* We therefore reject plaintiff's argument that the trial court lacked jurisdiction to bar the disclosure of additional witnesses in case No. 16-L-116.

¶ 44    On the merits, the parties dispute the application of *Jones*, which the trial court cited in support of its ruling. Plaintiff argues that the holding in *Jones* should not apply here, picking up on the statement in *Jones* that, "[i]n order for Rule 219(e) to apply, there must be some misconduct on the plaintiff's part." *Jones*, 391 Ill. App. 3d at 111. Plaintiff argues that, because she was not sanctioned or found to have committed misconduct, it was improper for the trial court to apply Rule 219(e) in her refiled action. Defendant disagrees. Although defendant argues that the reasoning in *Jones* is applicable here, defendant discounts the quoted language cited by plaintiff, observing that it is derived from *Scattered Corp.* and this court's holding in *In re Marriage of Webb*, 333 Ill. App. 3d 1104 (2002). Unlike the present case, *Scattered Corp.*, *Webb*, and *Jones* each involved the imposition of expenses associated with a voluntary dismissal. Those cases did not address the application of Rule 219(e) in a refiled case. Defendant's point is well taken.

¶ 45   In *Scattered Corp.*, the appellate court looked to the plain language of Rule 219(e) and the committee comment in determining that a trial court is required to make a preliminary finding of misconduct before imposing expenses pursuant to Rule 219(e). *Scattered Corp.*, 299 Ill. App. 3d at 659. In *Webb*, this court stated its agreement with *Scattered Corp.* "[B]efore imposing expenses pursuant to Rule 219(e), a trial court must make a preliminary finding as to whether the plaintiff engaged in discovery misconduct." *Webb*, 333 Ill. App. 3d at 1112.

¶ 46   Here, we disagree with *Jones* to the extent that it would require finding misconduct before applying Rule 219(e) in a refiled action. Our holding in this regard is supported by *P.A.C.E.*, 323 Ill. App. 3d 1067, which is the only published opinion identified by the parties that deals with the barring of witnesses in a refiled action pursuant to Rule 219(e). Our research has revealed no others.

¶ 47   The plaintiff in *P.A.C.E.* filed a negligence action relating to a car accident. Thereafter, he failed to provide adequate responses to several of the defendant's interrogatories. He similarly failed to comply with the trial court's order that he provide the defendant's requested documents. As a result, the trial court barred the plaintiff from introducing any evidence at trial in support of his claims for lost time, lost income, lost profits, and lost business. The trial court later barred the plaintiff from calling any witnesses at trial. This prompted the plaintiff to file a motion to voluntarily dismiss the action. The trial court granted the motion and dismissed the action without prejudice. When the plaintiff refiled his complaint, the trial court granted the defendant's motion to adopt both of the orders from the original action. In turn, the trial court granted summary judgment in favor of the defendant. *Id*. at 1069-72.

¶ 48   On appeal, the *P.A.C.E.* court rejected the plaintiff's argument that the sanction orders entered in the original action were reviewable because they constituted a procedural step leading to

the entry of summary judgment in the defendant's favor. After noting that the refiled action was a " 'separate cause of action' " (*id*. at 1074 (quoting *Kahle*, 104 Ill. 2d at 306)), the court held as follows:

> "Supreme Court Rule 219(e) [citation] does mandate that when the trial court rules upon permissible discovery and testimony in a refiled action it 'shall consider' a party's misconduct in the original action and any orders entered therein. The rule does not, however, require the court to reimpose the sanctions that were entered against the party in the earlier case. Rather, the misconduct of a party in the original action and any sanctions entered against him therein are merely facts to be considered by the court in the refiled action when it determines what witnesses and evidence will be permitted." *Id*.

¶ 49    We will return to *P.A.C.E.* in a moment. For now, we briefly state our agreement with *P.A.C.E.* that the misconduct of a party in the original action is merely a factor to be considered by the trial court in the refiled action when it determines what witnesses and evidence will be permitted. The plain language of Rule 219(e) states: "[i]n establishing discovery deadlines and ruling on permissible discovery and testimony, the court shall consider discovery undertaken (or the absence of same), any misconduct, and orders entered in prior litigation involving a party." Ill. S. Ct. R. 219(e) (eff. July 1, 2002). As noted, our supreme court has characterized this as the second mechanism provided in Rule 219(e) for preventing the abuse of voluntary dismissals. "When a case is refiled, the rule requires the court to consider the prior litigation in determining what discovery will be permitted, and what witnesses and evidence may be barred." *Morrison*, 191 Ill. 2d at 167. It is therefore clear that the trial court's duty to consider the prior litigation in a refiled action applies regardless of whether there has been a finding of misconduct.

¶ 50    For these reasons, we reject plaintiff's argument that the trial court was precluded from applying Rule 219(e) in her refiled action by the lack of any sanctions or findings of misconduct. Having resolved that issue, we must now consider what standards should be applied in addressing the propriety of a trial court's decision to bar witnesses or evidence in a refiled action. For guidance, we return to *P.A.C.E.*

¶ 51    As we discussed, *P.A.C.E.* involved the imposition of two sanctions in a refiled action. The first sanction barred the plaintiff from introducing any evidence at trial in support of his claims for lost time, lost income, lost profits, and lost business. The *P.A.C.E.* court applied traditional standards to determine whether this was an abuse of discretion. "In fashioning a sanction, the court must weigh the competing interests of the offending party's right to maintain a lawsuit against the need to accomplish the objectives of discovery and promote the unimpeded flow of litigation. [Citation.] In considering whether a particular sanction is appropriate, a court must consider the conduct of the offending party and the effect of that conduct upon the adverse party. [Citation.] That is to say, the sanction imposed should bear some reasonable relationship to the information withheld in defiance of the discovery request." *P.A.C.E.*, 323 Ill. App. 3d at 1075-76. The *P.A.C.E.* court found no abuse of discretion in the trial court's decision to bar the evidence in question, holding that the prejudice to the defendant was manifest. *Id.* at 1076.

¶ 52    However, the result was different with regard to the second sanction imposed in *P.A.C.E.* Relevant here, in considering the application of Rule 219(e) to bar witnesses in a refiled action, the *P.A.C.E.* court looked to the same factors that are used to determine whether the exclusion of a witness is an appropriate sanction in an original action. *Id.* These factors include (1) surprise to the adverse party, (2) the prejudicial effect of the witness's testimony, (3) the nature of the witness's testimony, (4) the diligence of the adverse party, (5) whether objection to the witness's testimony

was timely, and (6) the good faith of the party calling the witness. *Id.*; see also *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 110 (2004); *Boatmen's National Bank of Belleville v. Martin*, 155 Ill. 2d 305, 314 (1993). Because it was clear from the record that the defendant would not have been surprised or prejudiced by the testimony of the witnesses whom the defendant intended to present in the refiled action, the *P.A.C.E.* court held that the trial court had abused its discretion by imposing a sanction that effectively denied the plaintiff a trial on the merits of his claims. *P.A.C.E.*, 323 Ill. App. 3d at 1076-77.

¶ 53    Without expressing any opinion as to the propriety of the outcome in *P.A.C.E.*, we believe that *P.A.C.E.* applied the proper framework for analyzing the application of Rule 219(e) to bar evidence and witnesses in a refiled action. This includes a consideration of "the misconduct of a party in the original action and any sanctions entered against him therein." *Id.* at 1074.

¶ 54    With these principles in mind, we now consider whether the trial court's decision in this case was in conformity with the framework applied in *P.A.C.E.* After hearing arguments, the trial court agreed with defendant that the holding in *Jones* applied to bar plaintiff from disclosing additional expert witnesses.

¶ 55    In *Jones*, just before the trial was set to begin, the plaintiffs disclosed that the injured victim's condition had deteriorated over the past two months and that one of their medical experts was in the process of examining recent test results to determine what additional treatments and expenses the plaintiffs might incur. *Jones*, 391 Ill. App. 3d at 103. Although the plaintiffs' medical expert had been disclosed, it had not been disclosed that he would testify regarding future medical expenses. *Id.* at 103-04. The trial court questioned why this issue had not been raised at a hearing during the previous week and ruled that it was too late to disclose additional opinion testimony. In turn, the plaintiffs filed a motion to voluntarily dismiss the action. *Id.* at 104. In granting the

2018 IL App (2d) 170169

plaintiffs' motion to voluntarily dismiss, the trial court conditioned their right to refile on proof of payment to the defendants of $181,256.52 in expenses incurred in defending the original action. *Id.* at 106. On appeal, the plaintiffs argued that the order awarding expenses was improper because there had been no discovery misconduct. *Id.* at 111. The appellate court disagreed, pointing to the trial court's finding that the plaintiffs had waited two months to disclose the victim's deteriorated condition. Although there had been no finding that the plaintiffs' reason for taking the voluntary dismissal was pretextual, the appellate court held that the "[p]laintiffs' conduct in using their right to voluntarily dismiss the action to avoid the consequences of the court's orders is well within the ambit of Rule 219(e)." *Id.* at 114-15.

¶ 56    Here, the trial court held in pertinent part:

"When I consider Supreme Court Rule 219(e), I believe this is exactly the type of re-filing that should be barred under Supreme Court Rule 219(e). All the rulings were made, the cards were on the table, the plaintiff was facing a very likely motion for directed verdict, and they voluntarily dismissed to avoid that. They voluntarily dismissed the case to avoid the consequences of the Court's rulings on the proximate cause issue.

To me, this case is actually stronger for the purposes of [Rule] 219 than the *Jones* case that is cited and relied upon by the defense in their motion ***. ***

***

It is exactly what we have here. In this particular case, the Court had made significant rulings that were going to lead to, most likely, a motion for directed verdict and, arguably, a granting of that. I never got to that point, but that was the road we were heading on. And plaintiff's motion for voluntary dismissal was clearly done in an effort to avoid the consequences of the Court's order, clearly.

- 25 -

* * *

> And in this case, the Court does find that the plaintiff's conduct in using their right to voluntarily dismiss the action to avoid the consequences of the Court's orders is well within the ambit of Supreme Court Rule 219(e), and I am not going to allow it. So for that reason, the motion to adopt the Court's discovery orders and motions *in limine* rulings in the previously filed case, 12 L 348, is heard and granted."

¶ 57    Contrary to the trial court's ruling, the facts in *Jones* are not "exactly what we have here." To begin, as we discussed above, the cases are different because *Jones* considered the imposition of expenses associated with a voluntary dismissal rather than the application of Rule 219(e) in a refiled case. Beyond that, plaintiff asserts that the cases are different because she was "essentially a compliant litigant" who failed to anticipate the trial court's ruling in the original action that Dr. Brown lacked the foundational experience and knowledge to render opinions on the issue of proximate causation. We agree with plaintiff.

¶ 58    The plaintiffs in *Jones* were aware of the victim's deteriorated physical condition for two months before the trial, yet they waited until the trial was set to begin before they disclosed the need for additional expert opinions. The plaintiffs then moved for a voluntary dismissal to avoid the consequences of the trial court's ruling that it was too late to disclose additional opinion testimony. *Id.* at 104. Here, the trial court issued an adverse evidentiary ruling against plaintiff in the original action just before the trial was set to begin. At worst, this was a consequence of plaintiff's poor legal judgment. We note that testimony from undisclosed witnesses had been barred pursuant to plaintiff's own motion *in limine* No. 14. It is not as though plaintiff moved to reopen discovery and then moved for a voluntary dismissal upon the trial court's denial of her motion to reopen discovery.

¶ 59 Defendant argued extensively during oral argument, as she does in her brief, that the trial court's ruling was justified because plaintiff failed to comply with discovery deadlines in case No. 12-L-348. Defendant asserts that plaintiff made untimely disclosures of Dr. Brown's opinions throughout the discovery process in the original action. Despite the trial court's recognition that it never entered any discovery-related sanctions against plaintiff, defendant nonetheless argues that plaintiff's untimely disclosures constituted misconduct similar to that of the plaintiffs in *Jones* and that we should affirm the trial court's ruling on that basis. However, defendant acknowledges that the trial court allowed each of plaintiff's purportedly untimely disclosures and, in one instance, granted plaintiff additional time to supplement her disclosures. We therefore reject defendant's argument that plaintiff was unreasonably noncompliant with discovery orders in case No. 12-L-348, as the trial court implicitly ruled otherwise.

¶ 60 For all of these reasons, we agree with plaintiff that the trial court misapplied Rule 219(e). As we have discussed, Rule 219(e) prevents the abuse of a party's right to a voluntary dismissal through two entirely separate mechanisms. *Morrison*, 191 Ill. 2d at 166. The first provides for monetary sanctions associated with a party's right to a voluntary dismissal, while the second requires the trial court to consider the prior litigation in determining the scope of the permissible discovery and evidence in a refiled action. *Id.* at 166-67. Here, the trial court relied on *Jones* and improperly applied the standards that govern the imposition of monetary sanctions associated with a voluntary dismissal. This was not in conformity with the standards applied in *P.A.C.E.*, which established the proper framework for applying Rule 219(e) in a refiled action.

¶ 61 We therefore hold that the trial court abused its discretion by applying the wrong legal standards. See *Rockford Police Benevolent & Protective Ass'n, Unit No. 6 v. Morrissey*, 398 Ill. App. 3d 145, 154 (2010). However, because we lack the full record from case No. 12-L-348, we

are not in a position to rule on the permissible discovery and testimony in case No. 16-L-116. Accordingly, we reverse the trial court's order granting summary judgment in favor of defendant and remand the cause for further proceedings. On remand, the trial court is directed to reconsider the issue using the standards adopted from *P.A.C.E.* Beyond our observation of the differences between plaintiff's conduct in this case and the plaintiffs' conduct in *Jones*, we express no opinion herein as to whether plaintiff's conduct in this case constituted an abuse of the discovery process.

¶ 62                                       III. CONCLUSION

¶ 63    The judgment of the circuit court of Winnebago County is affirmed in part and reversed in part, and the cause is remanded with directions for further proceedings.

¶ 64    Affirmed in part and reversed in part.

¶ 65    Cause remanded with directions.