NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241175-U

NO. 4-24-1175

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 16, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| PATRICIA M. NIEUKIRK, as Executor of the Estate of Henry W. Nieukirk, Deceased, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellant, | ) | Peoria County |
| v. | ) | No. 22LA159 |
| OSF HEALTHCARE SYSTEM, d/b/a SAINT FRANCIS MEDICAL CENTER, an Illinois Corporation, and THE PEORIA SURGICAL GROUP, LTD., a | ) ) ) | |
| Dissolved Illinois Corporation, | ) | Honorable Frank W. Ierulli, |
| Defendants-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices Zenoff and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: Plaintiff failed to establish that the trial court erred with respect to its various evidentiary rulings, in narrowing plaintiff's issues instruction to the jury, or by granting a directed verdict in defendant's favor.

¶ 2    Plaintiff, Patricia M. Nieukirk, as executor of the estate of decedent, Henry W. Nieukirk, filed a wrongful death and survival action against defendants, OSF Healthcare System, d/b/a Saint Francis Medical Center, an Illinois Corporation (OSF), and the Peoria Surgical Group, LTD., a dissolved Illinois Corporation (PSG), alleging that defendants' employees or agents were medically negligent in their care and management of Henry following surgery, which caused his death. In February 2024, a jury trial was conducted in the matter, resulting in the trial court's entry of a directed verdict in OSF's favor and a jury verdict in favor of PSG. Plaintiff appeals, arguing that the court erred in (1) barring or limiting the testimony of her expert witnesses based on court

rulings in a prior voluntarily dismissed action involving the same parties and claims, (2) granting PSG's motion to replace its expert witness in the refiled action, (3) barring her from presenting testimony from two expert witnesses because they offered cumulative opinions , (4) granting PSG's objection to her examination of a witness, (5) granting OSF's motion for a directed verdict, (6) striking evidence deposition testimony to which defendants did not contemporaneously object, and (7) refusing and narrowing her proposed issues jury instruction. We affirm.

¶ 3                                      I. BACKGROUND

¶ 4                                   A. Underlying Events

¶ 5        On February 15, 2011, Henry was admitted to OSF and underwent surgery in the form of a laparoscopic low anterior colon resection performed by Dr. Julius Bonello, a colorectal surgeon, and Dr. David Crawford, a general surgeon. Both doctors were employed by PSG. The surgery involved the removal of a portion of Henry's colon and an anastomosis, *i.e.* the surgical reconnection of the remaining ends, using a "NiTi device." Following his surgery, Henry remained at OSF for several days, receiving postoperative care and management from OSF employees, including Dr. Steven M. Henriques, a second-year resident doctor. Henry also received care from attending physicians Dr. Bonello, Dr. Crawford, and Dr. Norman Estes, who was a general surgeon also employed by PSG. On February 19, 2011, Henry was discharged from OSF and returned home. He died approximately 36 hours later, on February 21, 2011, from peritonitis following a rupture and leak at the anastomotic site.

¶ 6                        B. Plaintiff's Original Action—Case No. 13-L-45

¶ 7        In February 2013, plaintiff filed a cause of action against defendants in Peoria County case No. 13-L-45, alleging medical negligence in connection with Henry's death. Her complaint included assertions that defendants' employees or agents negligently performed Henry's

colon resection, failed to ensure that the anastomotic site was adequately sealed, failed to recognize the symptoms of an anastomotic leak, failed to perform certain diagnostic tests, and negligently discharged Henry from the hospital. Over the next several years, the parties engaged in discovery, disclosing expert witnesses and taking witness depositions. Relevant to this appeal, plaintiff initially disclosed two experts—Dr. James Boffa, a general surgeon, and Dr. Ralph Silverman, a colorectal surgeon. Both experts were expected to offer opinions that Henry had an anastomotic leak prior to his discharge from OSF on February 19, 2011. PSG disclosed Dr. Douglas Aach, a general surgeon, as its retained expert witness, and OSF disclosed Dr. David Armstrong, a colorectal surgeon. Defendants' experts were expected to opine that Henry did not suffer an anastomotic leak while hospitalized but, rather, an acute or catastrophic failure of the anastomosis immediately prior to his death.

¶ 8        In August 2021, plaintiff disclosed two rebuttal expert witnesses—Dr. Jesse Hall, a critical care physician, and Dr. Robert Odze, a gastroenterological pathologist. Notably, plaintiff's disclosures relative to Dr. Odze indicated that he had reviewed pathology slides from Henry's autopsy and determined "that the advanced and voluminous nature of fibrinous exudates found on autopsy" demonstrated that Henry suffered an anastomotic leak that started before he was discharged from OSF. Plaintiff also supplemented the opinions of her originally disclosed experts, Dr. Silverman and Dr. Boffa, with rebuttal opinions.

¶ 9        Defendants moved to strike and bar both Dr. Hall and Dr. Odze on the basis that neither was a true rebuttal witness. Defendants argued that Dr. Hall offered no opinions that had not already been disclosed or expressed by plaintiff's primary expert witnesses, Dr. Boffa and Dr. Silverman, or that could not have been addressed by those original experts at the time of their disclosure. With respect to Dr. Odze, defendants argued that the subject of fibrinous exudates was

not an affirmative matter that they had introduced into the case, noting no prior experts had offered opinions regarding the subject. They asserted that, instead, the topic of the microscopic characteristics of fibrinous exudates was introduced by plaintiff during the depositions of defendants' experts.

¶ 10    On March 7, 2022, a trial in the matter was set to begin. On March 2, 2022, the trial court conducted a hearing, at which the parties presented argument on defendants' motions to strike and bar Dr. Hall and Dr. Odze. The court granted the motion, barring plaintiff from presenting testimony from both Dr. Hall and Dr. Odze. Immediately following the court's oral ruling, plaintiff's counsel stated as follows:

> "Judge, everybody should just take a pause. I have to call my client. This is a critical ruling for us, so if I have to re-file this case and disclose this gentlemen as primary. I may have to do that.
>
> So, I think we should pause or hold off on scheduling anything because I don't want to inconvenience the Court because we may be filing a voluntary dismissal so I thought that we should say that. I have to call my client."

On March 7, 2022, the court granted plaintiff's motion to voluntarily dismiss her case as to all defendants pursuant to section 2-1009 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1009 (West 2022)).

¶ 11          C. Plaintiff's Refiled Action—Case No. 22-LA-159

¶ 12    In August 2022, plaintiff refiled her case against defendants by initiating the underlying action, Peoria County case No. 22-LA-159. In her complaint, plaintiff, again, raised claims that defendants' employees or agents were negligent in their postoperative care and management of Henry, negligently discharged Henry from the hospital following his surgery, and

failed to identify and diagnose that he had an anastomotic leak prior to his discharge.

¶ 13    In October 2022, PSG filed a "Motion To Bar Testimony From Previously Dismissed Case And to Adopt Discovery." It noted that plaintiff's prior action was voluntarily dismissed on plaintiff's motion after the trial court granted defendants' motions to strike and bar testimony from plaintiff's alleged "rebuttal" expert witnesses, Dr. Odze and Dr. Hall. PSG argued that Illinois Supreme Court Rule 219(e) (eff. July 1, 2002) prevented plaintiff from circumventing the court's prior adverse ruling regarding her alleged "rebuttal" expert opinions and testimony through a voluntary dismissal and refiling of the same action. It asked the court to issue an order adopting and incorporating the court's previous order barring such opinions and testimony. PSG also asked that the court adopt the discovery from case No. 13-L-45 "into the present case." The same month, OSF adopted and joined PSG's motion. To their filings, defendants attached plaintiff's complaint in case No. 13-L-45 and a transcript of the March 2, 2022, hearing in that prior litigation.

¶ 14    In January 2023, plaintiff filed her response. She offered no objection to defendants' request to adopt discovery from the original action but argued their motion to bar expert opinions and testimony was improper. Plaintiff asserted that although she did not intend to disclose Dr. Hall as a retained expert in her refiled case, she would "disclose Dr. Odze as a retained expert," along with his challenged " 'rebuttal' opinions that a review of the pathology slides show[ed] that the fibrinous exudates found within Henry's abdomen during his autopsy were caused by an anastomotic leak that occurred more than three days before Henry's death, and that fibrinous exudates [were] not a normal result of bowel surgery."

¶ 15    According to plaintiff, Rule 219(e) provided no basis for barring Dr. Odze's opinions, asserting she had not engaged in any misconduct that would justify the discovery

sanction of barring witness testimony. She noted Dr. Odze's "rebuttal" opinions were not barred in the original action due to any misconduct, but because they "were not proper rebuttal." Plaintiff argued that nothing in the trial court's prior ruling held Dr. Odze's challenged opinions would have been improper if they had been included in her initial disclosures. Further, she asserted that "nothing in Rule 219(e) prevent[ed] [her] from including previously disclosed 'rebuttal' opinions in her initial *** disclosures in the current case." Plaintiff maintained that allowing Dr. Odze's opinions and testimony would cause no surprise or prejudice to defendants since they already deposed Dr. Odze, knew what Dr. Odze was going to say, and would have the opportunity to make their own disclosures to refute his opinions in the current action.

¶ 16 After additional briefing, the trial court conducted a hearing on defendants' motions; however, no transcript of that hearing is contained within the appellate record. In February 2023, the court entered a written order, granting the motion and ordering that plaintiff's experts, Dr. Odze and Dr. Hall, were barred. The court also ordered that all prior depositions were adopted in the underlying action. It further ordered plaintiff disclose her witnesses in the case pursuant to Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2018) on or before April 1, 2023.

¶ 17 In her Rule 213(f)(3) witness disclosures, plaintiff, again, named Dr. Boffa as an expert witness in the field of general surgery. She additionally disclosed as new expert witnesses in the case (1) Dr. Beth Moore, a board certified general surgeon and colorectal surgeon who replaced Dr. Silverman, and (2) Dr. Paul Cohen, a pathologist. Plaintiff's disclosures indicated that Dr. Cohen and Dr. Moore would, in whole or in part, offer opinions similar to the "rebuttal" opinions that had been barred from her originally filed case.

¶ 18 In May 2023, PSG filed a motion, which OSF later adopted, seeking to bar both Dr. Moore and Dr. Cohen from testifying at trial pursuant to Rule 219(e). They argued plaintiff's

disclosure of Dr. Cohen was "an attempt to get around the [trial court's] order barring *** Dr. Odze." Defendants also argued that Dr. Moore's disclosure was inappropriate, as she offered new standard of care opinions against Dr. Bonello and opinions similar to the barred opinions of Dr. Hall. Plaintiff responded, arguing Rule 219(e) allowed the disclosure of new experts or opinions in a refiled action and provided no basis to bar Dr. Moore and Dr. Cohen as expert witnesses.

¶ 19 In June 2023, the trial court conducted a hearing on defendants' motion. Again, the record does not include a transcript of the hearing. In July 2023, the court entered a written order, granting defendants' motion in full with respect to Dr. Cohen and in part as to Dr. Moore. Regarding Dr. Moore, the court ordered as follows: "Plaintiff's disclosure of Dr. Moore is allowed; however, Dr. Moore's opinions shall be limited to only those opinions previously disclosed of Dr. Silverman. Dr. Moore's opinions regarding Dr. Bonello's use of the [NiTi] device are stricken."

¶ 20 In January 2024, PSG filed a motion for leave to file a Rule 213(f)(3) disclosure, seeking to disclose Dr. Bipan Chand as its new surgical expert in place of Dr. Aach. PSG asserted Dr. Chand's disclosure expressly incorporated PSG's previous Rule 213(f)(3) disclosures and that Dr. Chand would address "the same subject areas as Dr. Aach," resulting in no prejudice to plaintiff. The record reflects the trial court conducted a Zoom hearing on PSG's motion, but the appellate record contains no transcript of that hearing. On January 12, 2024, the court entered a written order, granting PSG's motion.

¶ 21 Prior to trial, the parties filed various motions. Relevant to this appeal, OSF filed a motion *in limine* No. 30 to limit Dr. Moore's testimony and strike supplemental Rule 213(f)(3) disclosures that plaintiff had filed as to Dr. Moore. OSF noted the trial court's prior July 2023, order allowing plaintiff's disclosure of Dr. Moore as an expert witness but limiting her opinions "to only those opinions previously disclosed of Dr. Silverman." It argued, however, that Dr.

- 7 -

Moore's original disclosure, supplemental disclosure, and deposition testimony far exceeded Dr. Silverman's previously disclosed opinions.

¶ 22 OSF also filed a motion *in limine* No. 31, seeking to limit Dr. Boffa's testimony and strike supplemental Rule 213(f)(3) disclosures that plaintiff had filed as to Dr. Boffa. OSF argued Dr. Boffa's disclosures in the underlying case had been impermissibly expanded to include new liability opinions and that his disclosures improperly incorporated "the barred opinions of Dr. Odze and Dr. Hall." The record reflects PSG moved to adopt and join both of OSF's motions.

¶ 23 During pretrial hearings in January and February 2024, the parties presented argument on the motions. The trial court granted both, finding plaintiff was attempting to introduce through Dr. Moore and Dr. Boffa the previously barred "rebuttal" opinions. In setting forth its rulings, the court stated that it had reviewed the file, including prior hearings in the case and its previous rulings. It also noted that in the underlying refiled case, the parties had agreed that prior discovery depositions would be used and that they should not duplicate prior discovery. The court further emphasized the following:

"It's important that any reviewing court note that in 13-L-45 the Plaintiff voluntarily dismissed [her] action to avoid an adverse ruling by a prior judge. That prior ruling effectively barred what the Plaintiff styled as rebuttal witnesses. Rather than comply with the ruling and go to trial, the Plaintiff dismissed the action, which was a tactical decision on [her] part. [She] could have filed a motion to reconsider. [She] could have requested the trial be continued. [She] could have appealed that issue. But rather [she] chose to dismiss the case, and it made that clear as a part of the transcript found in 13-L-45.

In a hearing *** nearly a year ago today, the Plaintiff attempted to

- 8 -

reintroduce this prohibited evidence as case-in-chief witnesses following extensive argument and the application of Rule 219 and the six-part test. I barred those witnesses as an appropriate response that I believed was consistent with Rule 219 that the Court must not permit voluntary dismissal to be used to avoid compliance with court orders.

Additionally, I found that appropriate when considering the six-part test, and the Court determined that all of the factors generally weighed in favor of the defendant particularly under the factual situation considering the Plaintiff's dismissal of 13-L-45."

¶ 24 The trial court held that Dr. Moore's opinions had to "be consistent with Dr. Silverman's opinions or logical corollaries or logical expansions from that." The court further ordered that Dr. Boffa's testimony would "be limited to the prior agreement with the Defendants that the parties should not duplicate prior discovery depositions; and that prior discovery depositions will be used in the case."

¶ 25 The record shows PSG also filed a motion to bar "duplicative" expert testimony. It argued that plaintiff's disclosed controlled expert witnesses, Dr. Boffa and Dr. Moore, were both surgeons. It asserted that plaintiff's disclosures with respect to those expert witnesses, along with the witnesses' deposition testimony, demonstrated that they would offer duplicative opinions regarding (1) the standard of care applicable to Dr. Estes, Dr. Crawford, Dr. Bonello, and Dr. Henriques and (2) Henry's cause of death. PSG maintained that such duplicative or cumulative testimony was both prejudicial to defendants and an inefficient use of judicial resources. It asked the trial court to order that plaintiff choose just one of her experts to offer the surgical standard of care and causation opinions. During a pretrial hearing in January 2024, OSF orally joined in the

motion. Plaintiff responded, arguing that the testimony of both experts should be permitted at trial because they had different subspecialties. In particular, she noted Dr. Moore was a colorectal surgeon while Dr. Boffa was a general surgeon. Plaintiff also argued that Dr. Moore's and Dr. Boffa's opinions were different and not cumulative.

¶ 26 Ultimately, the trial court granted defendants' motion. In setting forth its ruling, the court stated as follows:

> "The motion is well taken and is granted. Now, either [plaintiff] must choose an expert or [she] may have [her] general surgery expert [(Dr. Boffa)] testify as to general surgery [(Drs. Estes, Crawford, and Henriques)] and *** may have [her] colorectal expert surgeon [(Dr. Moore)] testify as to the standard of care for colorectal surgery [(Dr. Bonello)] ***."

¶ 27 In February 2024, a jury trial was conducted in the matter. During her case-in-chief, plaintiff presented the videotaped evidence deposition of Dr. John Ralston, the pathologist who performed Henry's autopsy; testimony from Henry's treating physicians, Drs. Bonello, Henriques, Estes, and Crawford; and her medical expert, Dr. Boffa. Plaintiff also testified at trial and called as witnesses her two daughters.

¶ 28 After plaintiff rested her case, OSF moved for a directed verdict, arguing plaintiff failed to establish a *prima facie* case of medical negligence against its employee, Dr. Henriques. OSF asserted that Dr. Boffa, plaintiff's sole liability witness, failed to establish the requisite standard of care that applied to Dr. Henriques as a second-year resident. OSF also argued that plaintiff failed to establish that Dr. Henriques's actions were the cause of any injuries or damages. Specifically, it argued that Dr. Boffa had "conceded that the ultimate responsibility for [Henry], including responsibility for [his] discharge, lied [*sic*] with [Henry's] attending physicians." OSF

argued that it was undisputed that Dr. Henriques was supervised by the various attending physicians in the case, who performed their own evaluations of Henry and drew their own conclusions about his condition.

¶ 29　　　　Following argument by the parties, the trial court granted the motion, entering a directed verdict in OSF's favor and against plaintiff. The record shows that after considering the parties' arguments and reviewing a transcript of Dr. Boffa's testimony, the court found plaintiff failed to establish the standard of care that applied to Dr. Henriques.

¶ 30　　　　During its case-in-chief, PSG presented testimony from Dr. Chand. On February 16, 2024, the jury returned a verdict, finding in favor of PSG and against plaintiff. On February 23, 2024, the trial court entered a judgment on the verdict in PSG's favor.

¶ 31　　　　In May 2024, plaintiff filed a posttrial motion, challenging various rulings by the trial court. Following a hearing in August 2024, the court entered a written order denying plaintiff's posttrial motion "[f]or the reasons stated on the record." Notably, the appellate record contains no transcript of the August 2024 hearing.

¶ 32　　　　This appeal followed.

¶ 33　　　　　　　　　　　　　　II. ANALYSIS

¶ 34　　　　　　　　　　　　A. Plaintiff's Appellant Brief

¶ 35　　　　On appeal, OSF initially argues that plaintiff's appellant brief should be stricken for failing to comply with Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020). Specifically, it contends that the statement of facts in plaintiff's brief includes improper arguments and commentary rather than a straightforward recitation of relevant facts, as necessitated by the rule.

¶ 36　　　　Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020) sets forth requirements for the form and content of appellate briefs. It provides that an appellant's brief must include a "Statement

of Facts" that contains "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020).

¶ 37         "[T]he Illinois Supreme Court rules are not suggestions; they have the force of law and must be followed." *Ittersagen v. Advocate Health & Hospitals Corp.*, 2021 IL 126507, ¶ 37. When there is noncompliance with the rules, a reviewing court "may strike portions of the brief or dismiss the appeal, should the circumstances warrant." *Id.*; see *State ex rel. Fox v. Thornley*, 2023 IL App (4th) 220622, ¶ 71 ("A failure to comply with [Rule 341] is grounds for this court (at our discretion) to strike an appellant's brief and dismiss the appeal."). "Where violations of supreme court rules are not so flagrant as to hinder or preclude review, the striking of a brief in whole or in part may be unwarranted." (Internal quotation marks omitted.) *Hurlbert v. Brewer*, 386 Ill. App. 3d 1096, 1101 (2008).

¶ 38         Here, we agree with OSF's characterization of plaintiff's statement of facts. That section of her appellant brief contains unnecessary commentary and is improperly argumentative. Nevertheless, plaintiff's noncompliance with Rule 341(h)(6) does not hinder or preclude our review of the issues on appeal. Thus, we find the striking of her brief in whole or in part is unwarranted and elect, instead, to disregard any improper argument and commentary in her statement of facts.


¶ 39         B. Barring or Limiting of Plaintiff's Expert Witnesses' Testimony

                  Based on Court Rulings in Plaintiff's Originally Filed Action

¶ 40         On appeal, plaintiff first argues the trial court improperly barred or limited the testimony of her expert witnesses—Dr. Odze, Dr. Cohen, and Dr. Moore—based upon the court's

prior ruling on "rebuttal" witnesses in her original action, case No. 13-L-45. She contends the court misapplied the voluntary dismissal statute (735 ILCS 5/2-1009 (West 2022)) and Illinois Supreme Court Rule 219(e) (eff. July 1, 2002), lacked the authority to look "backwards" at her originally filed action, and otherwise improperly punished her for exercising her right of voluntary dismissal.

¶ 41        Section 2-1009(a) of the Code states that a plaintiff "may, at any time before trial or hearing begins, upon notice to each party who has appeared or each such party's attorney, and upon payment of costs, dismiss his or her action or any part thereof as to any defendant, without prejudice." 735 ILCS 5/2-1009(a) (West 2022). That section generally "confers on plaintiffs an unfettered right to voluntarily dismiss their claims without prejudice." *Morrison v. Wagner*, 191 Ill. 2d 162, 165 (2000).

¶ 42        Illinois Supreme Court Rule 219 (eff. July 1, 2002) is titled "Consequences of Refusal to Comply with Rules or Orders Relating to Discovery or Pretrial Conferences." "[Illinois Supreme Court Rule 219(c) (eff. July 1, 2002)] allows the trial court to impose sanctions if a party 'unreasonably' fails to comply with discovery orders or rules." *Ritschel Boehle v. OSF Healthcare System*, 2018 IL App (2d) 160975, ¶ 37 (quoting Ill. S. Ct. Rule 219(c) (eff. July 1, 2002)). "Rule 219(e) extends the trial court's enforcement of discovery orders to refiled cases." *Id.* Titled "Voluntary Dismissals and Prior Litigation," Rule 219(e) states as follows:

> "A party shall not be permitted to avoid compliance with discovery deadlines, orders or applicable rules by voluntarily dismissing a lawsuit. In establishing discovery deadlines and ruling on permissible discovery and testimony, the court shall consider discovery undertaken (or the absence of same), any misconduct, and orders entered in prior litigation involving a party. The court may, in addition to the assessment of costs, require the party voluntarily dismissing a claim to pay an

- 13 -

opposing party or parties reasonable expenses incurred in defending the action including but not limited to discovery expenses, expert witness fees, reproduction costs, travel expenses, postage, and phone charges." Ill. S. Ct. Rule 219(e) (eff. July 1, 2002).

The committee comments to Rule 219(e) further explain the rule's purpose:

"[Rule 219(e)] addresses the use of voluntary dismissals to avoid compliance with discovery rules or deadlines, or to avoid the consequences of discovery failures, or orders barring witnesses or evidence. This paragraph does not change existing law regarding the right of a party to seek or obtain a voluntary dismissal. However, this paragraph does clearly dictate that when a case is refiled, the court shall consider the prior litigation in determining what discovery will be permitted, and what witnesses and evidence may be barred. The consequences of noncompliance with discovery deadlines, rules or orders cannot be eliminated by taking a voluntary dismissal." Ill. S. Ct. R. 219(e), Committee Comments (Rev. Jun. 1, 1995).

¶ 43 Rule 219(e) "prevents discovery abuses by encouraging compliance with the entire discovery process." *Freeman v. Crays*, 2018 IL App (2d) 170169, ¶ 38. Our supreme court has held that "Rule 219(e) strikes the delicate balance between preserving a plaintiff's absolute right to refile, while discouraging noncompliance with the trial court's orders." *Ward v. Decatur Memorial Hospital*, 2019 IL 123937, ¶ 63. Specifically, "Rule 219(e) alters the consequences of taking a voluntary dismissal rather than restricting a party's right to obtain such a dismissal." *Morrison*, 191 Ill. 2d at 167.

"Instead of limiting a party's right to voluntarily dismiss his claims without

prejudice prior to trial, Rule 219(e) prevents voluntary dismissals from being used as an artifice for evading discovery requirements through two entirely different mechanisms. First, the rule enhances the monetary burden associated with such dismissals. ***

Second, Rule 219(e) discourages the abuse of voluntary dismissals by attaching additional adverse consequences later, when the party who obtained the dismissal seeks to refile. When a case is refiled, the rule requires the court to consider the prior litigation in determining what discovery will be permitted, and what witnesses and evidence may be barred." *Id.* at 166-67.

¶ 44    When fashioning a sanction under Rule 219(e), "the court must weigh the competing interests of the offending party's right to maintain a lawsuit against the need to accomplish the objectives of discovery and promote the unimpeded flow of litigation." *Smith v. P.A.C.E., a Suburban Bus Division of the Regional Transportation Authority*, 323 Ill. App. 3d 1067, 1075 (2001). When the sanction at issue involves the barring of a witness in the refiled action, a court should consider the following factors: "1) the surprise to the defendant; 2) the prejudicial effect of the witnesses' testimony; 3) the nature of the testimony; 4) the diligence of the defendant; 5) whether objection to the testimony was timely; and 6) the good faith of the plaintiff." *Id.* at 1076. "No single factor is determinative of the issue [citation], and each case presents a unique factual situation which must be considered in determining whether a particular sanction is proper." *Id.*

¶ 45    As indicated, plaintiff initially raises claims on appeal that the trial court misapplied the applicable law—section 2-1009 of the Code and Rule 219(e)—when deciding whether to bar or limit the expert testimony in her refiled action. To the extent such arguments require us to

construe the statute or the rule, they present a question of law and are subject to *de novo* review. *In re Marriage of Fatkin*, 2019 IL 123602, ¶ 25. However, the court's ultimate decision regarding whether to bar evidence in a refiled action is reviewed for an abuse of discretion. *Freeman*, 2018 IL App (2d) 170169, ¶ 39. "A trial court abuses its discretion only where its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view." *Wheat v. Murphy*, 2024 IL App (4th) 231307, ¶ 48.

¶ 46        Here, plaintiff first suggests that the trial court's decision to bar or limit expert testimony in her refiled case "was a direct violation of the voluntary dismissal statute." We disagree. As set forth in the discussion above, section 2-1009 of the Code allows a plaintiff the absolute right to voluntarily dismiss a case, with the opportunity for refiling. In this instance, plaintiff clearly exercised the rights afforded her under that section, as she was permitted to obtain a voluntary dismissal in case No. 13-L-45 and ultimately refiled her claims against defendants in the underlying action. The fact that Rule 219(e) was later applied in plaintiff's refiled case does not mean that her rights under section 2-1009 of the Code were restricted in any way. See *Morrison*, 191 Ill. 2d at 167 (stating that while Rule 219(e) does not restrict a party's right to obtain a voluntary dismissal, it does "alter[ ] the consequences of taking a voluntary dismissal"). None of the cases cited by plaintiff hold otherwise. We find her repeated assertions that the court violated section 2-1009 of the Code lack merit and effectively mischaracterize the nature of what occurred below.

¶ 47        Plaintiff further argues that the trial court misapplied Rule 219(e). She primarily contends that, pursuant to Rule 219(e), the court in her refiled action could only look "backwards" at her originally filed case in "very limited and narrow circumstance[s]," after first finding that she had engaged in misconduct. Again, we disagree.

¶ 48     This court's interpretation of a supreme court rule is governed by the same principles that govern statutory interpretation. *People v. Shunick*, 2024 IL 129244, ¶ 22. "Our objective is to ascertain and give effect to the intent of the drafters, and the best evidence of that intent is the language of the rules, given its plain and ordinary meaning." *People v. Walls*, 2022 IL 127965, ¶ 16. "When the language of the rules is clear and unambiguous, we must apply it as written without further aids of construction." *Id.*

¶ 49     Here, Rule 219(e) clearly applies to refiled cases following voluntary dismissals. It provides that when "establishing discovery deadlines and ruling on permissible discovery and testimony" in a refiled case, a trial court must consider certain factors, including (1) discovery already undertaken, (2) any misconduct, and (3) orders entered in the prior litigation. *Id.* The committee comments to the rule further explain the rule's requirements, stating that it "clearly dictate[s] that *when a case is refiled, the court shall consider the prior litigation* in determining what discovery will be permitted, and what witness and evidence may be barred." (Emphasis added.) Ill. S. Ct. R. 219(e), Committee Comments (Rev. Jun. 1, 1995). Accordingly, the plain and ordinary meaning of Rule 219(e) mandates the consideration of prior litigation in a refiled case. See *Morrison*, 191 Ill. 2d at 167 ("When a case is refiled, [Rule 219(e)] *requires* the court to consider the prior litigation in determining what discovery will be permitted, and what witnesses and evidence may be barred." (Emphasis added.)). The rule's language contains no qualification that requires a finding of misconduct as a condition precedent to the consideration of the prior litigation. Rather, it simply states that misconduct is one factor for consideration.

¶ 50     To support her contention on appeal, plaintiff cites *Jones v. Chicago Cycle Center*, 391 Ill. App. 3d 101, 111 (2009), for the proposition that "[i]n order for Rule 219(e) to apply, there must be some misconduct on the plaintiff's part." However, that case is factually distinguishable

in that it concerned a trial court's imposition of costs pursuant to section 219(e) as a condition of granting a voluntary dismissal in an original action, not the application of section 219(e) in the refiled case. *Id.* at 104-05.

¶ 51 Notably, in *Freeman*, 2018 IL App (2d) 170169, ¶ 49, the Second District addressed and rejected the same argument as the one raised by plaintiff under similar circumstances to the case bar. There, the trial court barred a plaintiff's expert witness in a refiled action pursuant to Rule 219(e). *Id.* ¶¶ 11-12. On review, the plaintiff argued, in part, that the court improperly applied Rule 219(e) in her refiled action because she had not been found to have committed any misconduct. *Id.* ¶ 44. The reviewing court first distinguished *Jones* on the basis that it "involved the imposition of expenses associated with a voluntary dismissal." *Id.* Noting the plain language of Rule 219(e), the court held that a trial court has a "duty to consider the prior litigation in a refiled action *** regardless of whether there has been a finding of misconduct" and that "[t]he misconduct of a party in the original action is merely a factor to be considered by the trial court in the refiled action when it determines what witnesses and evidence will be permitted." *Id.* ¶ 49; see *Ritschel Boehle*, 2018 IL App (2d) 160975, ¶ 40 (stating "misconduct in the prior action is just one factor to consider when ruling on discovery issues in the refiled action").

¶ 52 We agree with the Second District's rationale in *Freeman* and find *Jones* factually distinguishable from the present case. Additionally, as the court in *Freeman* held, "we disagree with *Jones* to the extent that it would require finding misconduct before applying Rule 219(e) in a refiled action." *Freeman*, 2018 IL App (2d) 170169, ¶ 46.

¶ 53 Plaintiff maintains that upon refiling, she had an absolute right to "reposition" her case, including by naming new experts or renaming experts with changed or amended opinions. Certainly, as the above discussion illustrates, plaintiff had the right to refile after the voluntary

dismissal of case No. 13-L-45. Upon refiling, nothing prevented her from attempting to "reposition" her case through the naming of new experts or the disclosure of new expert opinions. Nevertheless, Rule 219(e) grants a trial court the discretion to bar or limit witness testimony and evidence in a refiled action. See *Ritschel Boehle*, 2018 IL App (2d) 160975, ¶¶ 44-45 (holding that although a plaintiff may "use a voluntary dismissal to *attempt to* avoid the consequences of a court order," and nothing prevents a plaintiff from disclosing a new witness in a refiled action, the trial court still must consider prior litigation when a case is refiled and has "the discretion to bar or otherwise limit certain witnesses and/or evidence in the refiled action" (emphasis in original)).

¶ 54        As the trial court clearly had the authority to consider the prior litigation in the underlying refiled case and the discretion to bar or limit witness testimony and evidence, the dispositive question for purposes of review is whether the court abused its discretion in barring testimony from Dr. Odze and Dr. Cohen and limiting testimony from Dr. Moore. As stated, when making such a determination, "the trial court should apply the same factors used to determine whether barring a witness is an appropriate sanction in an original action." *Id.* ¶ 45; *Freeman*, 2018 IL App (2d) 170169, ¶ 52 (same); *Smith*, 323 Ill. App. 3d at 1076 (same). Again, the relevant factors include: "(1) surprise to the adverse party, (2) the prejudicial effect of the witness's testimony, (3) the nature of the witness's testimony, (4) the diligence of the adverse party, (5) whether objection to the witness's testimony was timely, and (6) the good faith of the party calling the witness." *Freeman*, 2018 IL App (2d) 170169, ¶ 52.

¶ 55        Here, the trial court's decision to bar or limit testimony from Drs. Odze, Cohen, and Moore in the refiled action stemmed from the court's decision in case No. 13-L-45 to bar what plaintiff characterized as "rebuttal" evidence from Dr. Odze and Dr. Hall regarding the timing of Henry's anastomotic leak. Defendants argued that the witnesses' opinions were not true rebuttal

opinions, as the timing of the leak was a primary issue in the case from its beginning and not something affirmatively introduced by defendants. The court agreed, barring both Dr. Odze and Dr. Hall from testifying.

¶ 56　　　　Upon refiling, defendants preemptively moved to bar testimony from Dr. Odze and Dr. Hall pursuant to Rule 219(e) based upon the prior ruling in case No. 13-L-45. Following a hearing, the trial court granted defendants' motion. The appellate record does not contain a transcript of that hearing. However, the record reflects the court did discuss that hearing during later proceedings, stating there had been "extensive argument" with respect to the application of Rule 219 and "the six-part test." It further stated as follows:

> "I barred those witnesses as an appropriate response that I believed was consistent with Rule 219 that the Court must not permit voluntary dismissal to be used to avoid compliance with court orders.
>
> Additionally, I found that appropriate when considering the six-part test, and the Court determined that all of the factors generally weighed in favor of the defendant[s] particularly under the factual situation considering the Plaintiff's dismissal of 13-L-45."

¶ 57　　　　Given the facts presented, we can find no abuse of discretion. Initially, as OSF notes, "an appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). Absent such a record, "it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Id.* at 392. "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Id.* Here, because there is no

transcript of the hearing on defendants' motion to bar Dr. Odze and Dr. Hall in the refiled action, the court's particular findings are unknown, and we may presume that it ruled correctly.

¶ 58 Further, the trial court's comments at later hearings support that it engaged in the proper analysis. In particular, its comments establish that the court considered the relevant six factors in determining whether to bar witness testimony in a refiled action and that it "generally" found that those factors weighed in favor of defendants.

¶ 59 Plaintiff argues the trial court failed to correctly apply the relevant six factors, suggesting they weighed in her favor rather than in defendants' favor. However, the record shows the court's rulings that barred or limited expert witness testimony from Drs. Odze, Cohen, and Moore were based on the prior determination in case No. 13-L-45 that the subject matter of their barred opinions was improperly offered as rebuttal in that prior litigation after that matter had been pending for more than eight years. A full record of the prior litigation is not before us. However, the portions provided show that in seeking to have the evidence barred, defendants argued that plaintiff's alleged rebuttal witnesses did not refute any affirmative matter introduced in the case by defendants. Rather, they expressed opinions regarding the timing of the anastomotic leak that could have been addressed from the outset of the case. Defendants also argued that plaintiff should not be allowed to interject new issues "into the case at the eleventh hour." The court accepted defendants' arguments and barred plaintiff's rebuttal witnesses.

¶ 60 In the prior litigation, plaintiff did not challenge the trial court's ruling through a motion to reconsider or by proceeding to trial and appealing from an adverse judgment. Instead, as she states in her appellant's brief, she "accepted the ruling, and refiled." More specifically, plaintiff elected to voluntarily dismiss her action and refile her claims to avoid the court's unfavorable order.

¶ 61 Significantly, we note that, on appeal, plaintiff does not identify as a discrete issue the propriety of the trial court's prior ruling in case No. 13-L-45. While she criticizes the court's prior order barring her "rebuttal" witnesses and their opinions, she does not present her criticism as a distinct issue for appellate review and sets forth no fully developed argument as to the issue. Rather, in her appellant's brief, she makes only limited references to her disagreement with the prior order. Plaintiff also fails to cite portions of the underlying record to support her criticism or to even establish that she challenged the propriety of the prior order with the trial court below in her refiled action. Although she cites a case that she maintains the court "disregarded" in case No. 13-L-45, her contention is conclusory and lacks a reasoned analysis. See *Freeman*, 2018 IL App (2d) 170169, ¶¶ 13, 18-36 (where the propriety of a discovery order in an originally filed case was challenged by the plaintiff in her refiled case and then argued on appeal). Because of the deficiencies in plaintiff's argument, the propriety of the court's order in case No. 13-L-45 is not properly before us, and we express no opinion on whether it was correctly entered. Additionally, that prior order and its underlying rationale stand unchallenged for purposes of determining whether, under Rule 219(e), witnesses and evidence were properly barred upon plaintiff's refiling.

¶ 62 Given the facts presented and the issues that are properly before this court, we cannot say the trial court's decision in plaintiff's refiled action to bar the same or similar improper "rebuttal" evidence that was barred in her originally filed case was arbitrary, fanciful, or unreasonable. The record reflects, and plaintiff does not dispute, that the exclusion of improper "rebuttal" evidence in case No. 13-L-45 was the basis for the court's decision to bar testimony from Dr. Odze and Dr. Cohen and to limit testimony from Dr. Moore. As stated, the issue of the propriety of the court's original decision in case No. 13-L-45 to bar the proposed rebuttal evidence has not been properly presented or argued to this court on appeal. Accordingly, we find no abuse

of discretion by the court in its application of Rule 219(e) in plaintiff's refiled action.

¶ 63                    C. Grant of PSG's Motion to Replace Its Expert Witness

¶ 64            Plaintiff next argues the trial court abused its discretion in granting PSG leave to replace its existing expert witness, Dr. Aach, with a new expert witness, Dr. Chand. She contends PSG brought its motion to replace its expert on the eve of trial, asserting the court granted PSG's motion only 26 days before the trial began. Plaintiff also argues that the timing of the replacement caused her unfair surprise and compounded the court's error in the barring of her own experts.

¶ 65            Illinois Supreme Court Rule 213(f) (eff. Jan. 1, 2018) provides that "a party must furnish the identities and addresses of witnesses who will testify at trial," along with certain other information. The rule "permits litigants to rely on the disclosed opinions of opposing experts and to construct their trial strategy accordingly." *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 109 (2004). Additionally, Illinois Supreme Court Rule 218(c) (eff. Feb. 2, 2023) requires discovery to be completed within 60 days before trial, stating as follows:

> "All dates set for the disclosure of witnesses, including rebuttal witnesses, and the completion of discovery shall be chosen to ensure that discovery will be completed not later than 60 days before the date on which the trial court reasonably anticipates that trial will commence, unless otherwise agreed by the parties."

¶ 66            However, Rule 218(c) also states that it should "be liberally construed to do substantial justice between and among the parties." *Id.* Further, the "disclosure of an expert within 60 days of trial does not mean the circuit court must automatically bar the witness." *Frulla v. Hyatt Corp.*, 2018 IL App (1st) 172329, ¶ 26. Ultimately, "[t]he admission of evidence pursuant to Rule 213 is within the sound discretion of the trial court, and the court's ruling will not be disturbed absent an abuse of that discretion." *Sullivan*, 209 Ill. 2d at 109; see *Frulla*, 2018 IL App (1st)

172329, ¶ 26 (stating "[t]he circuit court's decision with respect to discovery matters will not be overturned absent an abuse of discretion").

¶ 67    Here, on January 5, 2024, less than 60 days before trial, PSG filed a motion for leave to disclose Dr. Chand in place of Dr. Aach, asserting Dr. Chand would address the same subject matter as its prior expert. The record indicates that following a hearing on January 10, 2024, the trial court entered a written order, granting the motion and ordering the parties to work together to coordinate Dr. Chand's deposition.

¶ 68    On appeal, plaintiff suggests the trial court's rationale for granting PSG's motion was insufficient, asserting that the court "blithely" stated "something to the effect that 'these things happen.' " Significantly, however, she provides no citation to the record to support her assertion. The absence of a proper citation is likely because the appellate record does not contain a transcript of the hearing on PSG's motion. As already stated, when an appellant fails to meet their burden of presenting a sufficiently complete record for review, we may presume "that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch*, 99 Ill. 2d at 392. "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Id.* Given the absence of a hearing transcript and factual account of what occurred at the hearing, *i.e.*, the parties' arguments and the court's rationale, there exists no basis for finding an abuse of discretion.

¶ 69    Additionally, as noted by PSG on appeal, the trial court's comments during trial indicate that Dr. Chand was restricted to testifying to the same opinions as expressed by PSG's prior expert, Dr. Aach. Specifically, the court noted as follows:

"For purposes of the record, I do want to note that and I want to make it clear that, early on in this case, Plaintiff's counsel chose to engage a new expert,

Dr. Moore. I made it clear that Dr. Moore's opinions would be or must be consistent and not expand on previously disclosed opinions of Dr. Silverman.

By the same token, when PSG requested leave to tender a new expert, I put that same onus on them, that their expert would be limited to the opinions of their prior expert. My recollection is [PSG's counsel] said that his new expert would testify consistently with his prior expert, and I'm going to hold him to that."

Such circumstances indicate plaintiff could not have been surprised by the subject matter of Dr. Chand's testimony and that she suffered no prejudice.

¶ 70                           D. Cumulative Expert Witness Testimony

¶ 71         Plaintiff further argues that the trial court erred in granting PSG's motion to bar the testimony of Dr. Moore and Dr. Boffa on the basis that it was duplicative or cumulative. She argues that the doctors "were from different medical specialties," asserting that as required by law, she obtained "a colorectal surgeon [(Dr. Moore)] to testify as to the deviations of the colorectal physician and a general surgeon [(Dr. Boffa)] to testify as to the standard of care of a general surgeon." Plaintiff maintains that it was not only her right but a legal requirement that she "name a physician from the same field of expertise to testify against the defendant physician[s]."

¶ 72         "[T]he exclusion of cumulative evidence is within the discretion of the trial court, whose ruling will not be reversed absent a clear abuse of that discretion." *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 495 (2002). "This discretion includes limiting the number of expert witnesses." *Id.*

¶ 73         The record shows PSG moved to bar "duplicative" expert testimony by plaintiff's experts, Dr. Boffa and Dr. Moore. Both doctors were board certified in general surgery and Dr. Moore was additionally board certified in colorectal surgery. In its motion, PSG argued that

plaintiff's discovery disclosures and the experts' depositions showed they would offer cumulative opinions with respect to the actions of Henry's treating doctors, both the general surgeons who provided care, *i.e.*, Drs. Estes, Crawford, and Henriques, and Henry's colorectal surgeon, *i.e.*, Dr. Bonello. The trial court granted the motion, ordering as follows: "The motion is well taken and is granted. Now, either [plaintiff] must choose an expert or [she] may have [her] general surgery expert testify as to general surgery and *** may have [her] colorectal expert surgeon testify as to the standard of care for colorectal surgery."

¶ 74        Here, plaintiff does not appear to dispute that allowing both of her experts to testify as to the standard of care and causation for all of Henry's treating physicians would have resulted in duplicative testimony. Nor does she argue it was error for the trial court to deny her the ability to present duplicative testimony. Instead, she argues that she was entitled to present different experts for each treating physician's specialty. We note, however, that the court granted plaintiff precisely that option. Specifically, the court ruled that plaintiff could either present the testimony of just one of her experts to testify regarding the standard of care and causation for all of Henry's treating physicians *or* she could present testimony from both of her expert witnesses, so long as each witness was limited to only one field of expertise—general surgery or colorectal surgery.

¶ 75        To the extent plaintiff's argument suggests that she was not given the option of having both of her experts testify at trial, she mischaracterizes the trial court's ruling. Under the circumstances presented, we find no abuse of discretion by the court.

¶ 76                    E. Plaintiff's Examination of Dr. Bonello

¶ 77        Plaintiff next argues the trial court erred by preventing her from questioning Dr. Bonello regarding the failure of the NiTi device. Dr. Bonello was one of the doctors who performed Henry's surgery and was disclosed by PSG as a controlled expert witness under Rule 213(f)(3).

Plaintiff asserts that under the defendants' theory of the case, Henry's anastomotic leak was the result of " 'a sudden catastrophic event' from the NiTi device coming apart *** after Henry was discharged from the hospital." According to plaintiff, through her questioning of Dr. Bonello, she "was attempting to show that for the NiTi device to simply 'come apart' *there had to be something wrong with it*." (Emphasis added.). She maintains that "exploring that [NiTi] devices do not 'just fall apart' on their own[ ] was instrumental to rebut[ting] defendants' theory."

¶ 78          Initially, we note that although plaintiff characterizes her questioning of Dr. Bonello as cross-examination, the record shows that plaintiff called Dr. Bonello as a witness during her case-in-chief. Plaintiff's challenged questioning occurred during her direct examination of Dr. Bonello, not during cross-examination.

¶ 79          During questioning by plaintiff, Dr. Bonello testified he used a NiTi device in performing Henry's surgery. The NiTi device accomplished the anastomosis through compression. Dr. Bonello asserted that prior to Henry's surgery, he had used such a device eight times. He also testified that Henry's autopsy showed that, at some point, the NiTi device "had come apart," which was not supposed to happen "until two weeks" later, when the device would "fall[ ] out" in "one piece that's passed with poop." Dr. Bonello denied that the fact that Henry's NiTi device was found in two pieces indicated that "something went wrong with that device." Instead, he asserted the circumstances indicated the device "popped" in that "some pressure overcame the ability of the two pieces of the NiTi device to stay together," which he believed occurred when Henry received cardiopulmonary resuscitation (CPR) prior to his death. The following colloquy then occurred:

          "Q. Okay. Now, if it didn't happen during the CPR and it didn't happen

          because of CPR, would that mean—it had popped on its own, would that mean that

something was wrong with the NiTi device?

MR. SMITH [(PSG'S ATTORNEY)]: Objection, calls for speculation.

THE COURT: Sustained.

\* \* \*

Q. Does the fact that it was in two pieces—and let's assume that it didn't happen from the CPR. Would the fact that it was in two pieces, in your professional opinion, would that mean that likely something went wrong with the NiTi device?

MR. SMITH: Same objection, foundation, 213.

THE COURT: Sustained."

The record shows the trial court heard arguments on the matter outside the jury's presence and sustained the objection on the basis that "the line of questioning call[ed] for speculation."

¶ 80        "Generally, evidentiary rulings are within the sound discretion of the trial court and will not be reversed on review absent an abuse of discretion." *Lovell v. Sarah Bush Lincoln Health Center*, 397 Ill. App. 3d 890, 900 (2010); see *Simmons v. Garces*, 198 Ill. 2d 541, 567 (2002) (stating that a trial court's rulings on objections are within the court's discretion). Additionally, a party is generally "not entitled to reversal based upon evidentiary rulings unless the error was substantially prejudicial and affected the outcome of the case." *Taluzek v. Illinois Central Gulf R.R. Co.*, 255 Ill. App. 3d 72, 83 (1993).

¶ 81        Here, the trial court determined plaintiff's challenged questioning of Dr. Bonello called for speculation. Notably, plaintiff does not dispute the court's basis for sustaining the objection. Instead, she contends the line of questioning should have been allowed and was of the "utmost importance" in rebutting defendants' theory of defense. However, in setting forth her arguments, plaintiff fails to cite any specific defense testimony or evidence in the record that would

establish the relevancy of her proposed line of questioning, which she admits was meant to show there was "something wrong with" the NiTi device. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (An appellant's argument "shall contain the contentions of the appellant and the reasons therefor, *with citation of* the authorities and *the pages of the record relied on*." (Emphases added.)). We note, in arguing the issue before the trial court, defendants' attorneys maintained that plaintiff was "conflating" the issue of a "device failure" with that of a "defective device," and that the latter was not a relevant issue in the case. Given these circumstances, we find no abuse of discretion by the court.

¶ 82        F. The Trial Court's Grant of a Directed Verdict in OSF's favor

¶ 83        Plaintiff argues the trial court erred by granting OSF's motion for a directed verdict. Initially, she contends that because the court improperly punished her for voluntarily dismissing the prior litigation by barring or limiting the testimony of her expert witnesses in this refiled case, the court, consequently, also erred by directing a verdict in favor of OSF. However, for the reasons already stated, the court's actions in barring or limiting expert witness testimony under Rule 219(e) were not an abuse of discretion. Thus, such contentions cannot support a finding that the court erred in granting OSF's motion for a directed verdict.

¶ 84        Plaintiff also argues that the trial court erred in granting OSF a directed verdict because Dr. Boffa's expert testimony sufficiently established a *prima facie* case of negligence against Dr. Henriques, OSF's employee. She asserts that when viewing the evidence in a light most favorable to her, Dr. Boffa's testimony established all the necessary elements of her medical negligence claim with respect to Dr. Henriques.

¶ 85        "A directed verdict *** is properly entered in those limited cases where all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors

movant that no contrary verdict based on that evidence could ever stand." (Internal quotation marks omitted.) *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992). "The plaintiff must present some evidence on every essential element of the cause of action; otherwise, the defendant is entitled to a judgment in his favor as a matter of law." *Keiser-Long v. Owens*, 2015 IL App (4th) 140612, ¶ 31. "An adverse ruling on a motion for a directed verdict *** is reviewed *de novo*. *Harris v. Thompson*, 2012 IL 112525, ¶ 15.

¶ 86 "The elements of a negligence cause of action are a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach." (Internal quotation marks omitted.) *Johnson v. Armstrong*, 2022 IL 127942, ¶ 51. Standard of care falls under the duty element. *Id.* "The standard of care in a medical professional negligence case is to act as would an ordinarily careful professional." (Internal quotation marks omitted.) *Id.* ¶ 52. The plaintiff has the burden of establishing the standard of care and must generally do so through expert testimony "because jurors are not skilled in the practice of medicine and would find it difficult without the help of medical evidence to determine any lack of necessary scientific skill on the part of the physician." (Internal quotation marks omitted.) *Id.*

> "Without a standard of care by which to judge the physician, there would be no way to determine whether any deviation or breach has occurred. Thus, in cases of specific negligence, where the plaintiff has alleged some specific course of conduct on the part of the defendant that breached the defendant's duty, it must be shown what each defendant's standard of care was in relation to that course of conduct." *Id.* ¶ 57.

¶ 87 Further, "a plaintiff does not discharge this burden of proof by merely presenting expert testimony which offers an opinion as to correct procedure or which suggests, without more,

that the witness would have conducted himself differently than the defendant." *Advincula v. United Blood Services*, 176 Ill. 2d 1, 24 (1996). "The expert must base his opinion upon recognized standards of competency in his profession," and "[a] difference of opinion between acceptable but alternative courses of conduct is not inconsistent with the exercise of due care." *Id.*

¶ 88    Here, plaintiff alleged Dr. Henriques was negligent for failing to diagnose Henry's anastomotic leak, failing to assess and evaluate him for discharge, and improperly discharging him from OSF. In granting OSF's motion for a directed verdict, the trial court found plaintiff failed to establish the standard of care applicable to Dr. Henriques. We agree.

¶ 89    At trial, Dr. Boffa testified he was a general surgeon. Upon questioning by plaintiff, he defined standard of care as "what a reasonable physician would do in a similar situation." Dr. Boffa also stated that a patient's "clinical course" meant "how they're doing" or "how they did." The following colloquy then occurred:

> "Q. Based on the definition of the standard of care that you gave and after reviewing the medical chart of Henry ***, have you reached certain conclusions about [Henry's] clinical course and what it should have suggested to Dr. Bonello, Dr. Henriques, Dr. Estes, and Dr. Crawford?
>
> A. Yes, that [Henry] was showing signs of an anastomotic leak and it was not discovered."

¶ 90    Dr. Boffa identified signs or symptoms of an anastomotic leak, including tachycardia, increasing abdominal pain, "distended belly," neutrophilia, a rapid breathing rate, guarding, and pain that could not be controlled by oral medications. He opined that Henry exhibited such signs and symptoms while hospitalized. Dr. Boffa further testified as follows:

> "Q. Do you have an opinion to within a reasonable degree of medical

certainty as to whether Dr. Estes and Dr. Henriques breached the standard of care by failing to properly assess and evaluate [Henry] for discharge from the hospital on the 19th?

A. Yes

Q. What is that opinion?

A. That they breached the standard of care."

* * *

Q. Do you have an opinion with a reasonable degree of medical certainty, given the symptom complex displayed by [Henry] throughout the hospitalization, that Drs. Crawford, Henriques, Bonello and Estes were required under the standard of care to make a diagnosis of an anastomotic leak?

* * *

A. Yes.

Q. What is that opinion?

A. They breached the standard of care by not making the proper diagnosis."

¶ 91 As OSF argues, Dr. Boffa never identified a specific standard of care applicable to Dr. Henriques. He generally defined standard of care as what a reasonable physician would do in similar circumstances and then opined that Henry showed signs of an anastomotic leak while hospitalized. However, he never specifically testified to what was required of Dr. Henriques in his care and management of Henry. By contrast, Dr. Boffa did identify precisely what the standard of care required of other doctors in the case, asserting (1) Dr. Crawford should have ordered an X-ray or CT scan during Henry's hospitalization to check for an anastomotic leak and (2) Dr. Bonello should have ordered "a CBC with differential" on the day of Henry's discharge. No similar,

- 32 -

specific standard of care opinions were offered for Dr. Henriques. We agree with OSF that Dr. Boffa offered mere conclusions with respect to Dr. Henriques, which was "not instructive to the jury." Accordingly, we find the trial court committed no error in granting OSF's motion for a directed verdict.

¶ 92                    G. Striking of Unobjected-To Evidence Deposition Testimony

¶ 93          Plaintiff next argues the trial court erred by striking a portion of Dr. Ralston's evidence deposition testimony, which she argues defendants failed to object to at the time of the deposition. She contends the court's ruling violated Illinois Supreme Court Rule 211(c)(1) (eff. Jan. 1, 1967), which provides that objections to evidence deposition testimony are waived at trial when the matter "might have been corrected if presented" at the time of the deposition.

¶ 94          The record shows Dr. Ralston performed Henry's autopsy and plaintiff presented his evidence deposition during her case-in-chief. At his deposition, Dr. Ralston was questioned by PSG regarding the issue of fluid found in Henry's abdominal cavity, and the following colloquy occurred:

> "Q. *** You would agree, wouldn't you, Doctor, that if someone had [two] liters of brown purulent fluid in their abdomen as [Henry] did at autopsy, someone with that amount of fluid in their abdomen, they would be in an extreme amount of pain, wouldn't they?
>
> A. Well, to be perfectly frank, I always had thought that and—But about six months ago I had my own medical scare, and I did have fluid buildup in my abdomen, bleeding of the abdomen. And the nursing staff was frankly amazed that I was able to walk around. So I guess it depends on the individual.
>
> I would have thought that given his condition, he wouldn't be able to move

with that much fluid built up in there, but I guess some nuts are different than others.

> Q. Well, let me try that again. And, again, Doctor, I'm going to move to—
>
> A. Sure.
>
> Q. –strike that—that answer."

PSG then re-asked the question, resulting in the following colloquy:

> "Q. You agree, don't you, that if someone was walking around for 72 hours with [two] liters of fluid in their abdomen, you would expect them to be on their side in bed not wanting to move; isn't that right?
>
> \*\*\*
>
> A. In normal cases, most people I would expect them to be in extreme pain and not wanting any disruption of their abdomen, nobody touching it, anything like that."

¶ 95　　　　During pretrial proceedings, the trial court ordered, over plaintiff's objection, that PSG's initial question and Dr. Ralston's response be stricken. The court reasoned that it was not "appropriate to have an expert witness talk about his own personal experience particularly when the [question] is answered clearly and directly in the next series of questions."

¶ 96　　　　Generally, "[t]he admissibility of expert testimony is reviewed using an abuse of discretion standard." *Young v. Wilkinson*, 2022 IL App (4th) 220302, ¶ 58. Further, as plaintiff points out, Illinois Supreme Court Rule 211(c)(1) (eff. Jan. 1, 1967) provides as follows:

> "Grounds of objection to the competency of the deponent or admissibility of testimony which might have been corrected if presented during the taking of the deposition are waived by failure to make them at that time; otherwise objections to the competency of the deponent or admissibility of testimony may be made when

the testimony is offered in evidence."

¶ 97    Here, contrary to plaintiff's suggestion on appeal, PSG did challenge Dr. Ralston's testimony at the time of his deposition by moving to strike. Although PSG did not state the grounds for striking the testimony, the record indicates its motion was based on the testimony being unresponsive to PSG's questioning. Specifically, it shows that just prior to the challenged exchange, PSG moved to strike other testimony from Dr. Ralston on the basis that it was unresponsive. Its statement during the exchange at issue that it was "again" moving to strike Dr. Ralston's answer suggests that it was relying on the same ground. See *Snowstar Corp. v. A&A Air Conditioning & Refrigeration Service, Inc.*, 2024 IL App (4th) 230757, ¶ 83 (indicating that an objection to evidence will not be deemed forfeited based on a failure to specifically state the grounds for the objection if the grounds are obvious from the record).

¶ 98    Moreover, plaintiff fails to explain how the testimony at issue could have been "corrected" by a more specific challenge at the time of the deposition. Not only did PSG's motion to strike draw attention to the matter, but Dr. Ralston ultimately offered additional testimony that established his opinions regarding fluid in the abdomen. Contrary to plaintiff's assertions on appeal, she had the opportunity to explore the basis of Dr. Ralston's opinions on that subject.

¶ 99    We note that in a single sentence in her brief, plaintiff also argues that the trial court was "wrong" in finding that Dr. Ralston's challenged testimony was "improper," noting that " '[a]n expert may base his opinion on personal observation.' " (quoting *Saunders v. Norfolk & Western Ry. Co.*, 54 Ill. App. 3d 307, 315 (1977)). However, plaintiff's argument on this point is conclusory and not fully developed. Nor does she explain how testimony from Dr. Ralston regarding his own personal "medical scare" with a different medical condition (involving abdominal bleeding) than the one at issue was either relevant to the underlying proceedings or

responsive to the question posed by PSG. Thus, given the circumstances presented, we find no abuse of discretion by the court.

¶ 100                    H. Plaintiff's Proposed Issues Jury Instruction

¶ 101        Finally, plaintiff argues that the trial court abused its discretion by refusing and narrowing her proposed issues jury instruction. She complains that she was not allowed to have the jury instructed on all of her theories of liability against PSG, which were plainly supported by the evidence.

¶ 102        "[C]ivil litigants are entitled to have the jury instructed on the issues presented, the applicable legal principles, and the facts that must be proved to support a verdict." *Bailey v. Mercy Hospital & Medical Center*, 2021 IL 126748, ¶ 41. "Generally speaking, litigants have the right to have the jury instructed on each theory supported by the evidence." *Heastie v. Roberts*, 226 Ill. 2d 515, 543 (2007).

> " 'While the threshold for permitting an instruction in a civil case is modest, the standard for reversing a judgment based on failure to permit an instruction is high. The decision as to which jury instructions to use falls within the discretion of the trial court.' " *Bailey*, 2021 IL126748, ¶ 41 (quoting *Heastie*, 226 Ill. 2d at 543).

¶ 103        A trial court's decision to grant or deny a jury instruction is reviewed for an abuse of discretion. *Id.* ¶ 42. "The standard for determining an abuse of discretion is whether, taken as a whole, the instructions are sufficiently clear so as not to mislead and whether they fairly and correctly state the law." (Internal quotation marks omitted.) *Id.* "Ultimately, a reviewing court should grant a new trial only when the trial court's refusal to give a tendered jury instruction results in serious prejudice to the party's right to a fair trial." *Id.*

¶ 104        "The purpose of the issues instruction is to inform the jury of the plaintiff's claims

- 36 -

and the defendant's responses." *Howat v. Donelson*, 305 Ill. App. 3d 183, 186 (1999). Illinois Pattern Jury Instruction, Civil, No. 20.01 (rev. Aug. 2023) (hereinafter IPI Civil No. 20.01) provides that parties should set forth their allegations which are supported by the evidence "in simple form without undue emphasis or repetition." (Emphasis omitted.)

¶ 105 Here, the record shows that plaintiff submitted an issues jury instruction under IPI Civil 20.01 that stated PSG was negligent in connection with Henry's death in the following ways:

"a. Failed to diagnose anastomotic leak;

b. Failed to perform CBC with differential;

c. Failed to perform appropriate diagnostic imaging;

d. Failed to appropriately assess or evaluate Henry *** for discharge; or

e. Improperly discharged Henry *** from the hospital."

Following argument by the parties, the trial court modified plaintiff's proposed instruction by striking paragraphs a, d, and e of plaintiff's proposed instruction and altering paragraphs b and c. Ultimately, the court instructed the jury, in part, as follows:

"The plaintiff claims that *** [PSG] was negligent in one or more of the following respects:

b. failed to order a CBC with differential on [February 19, 2011,] in order to diagnose an anastomotic leak

c. failed to perform an x-Ray or a CT scan on February 17th or 18th, 2011, in order to diagnose an anastomotic leak."

¶ 106 PSG argues that following extensive argument, the trial court determined that paragraphs a, d, and e of plaintiff's proposed instruction were combined with or subsumed within its given instruction. It contends the court's action was proper and consistent with the evidence

presented at trial. See *Meister v. Henson*, 253 Ill. App. 3d 619, 627 (1993) (finding a trial court did not abuse its discretion in altering a proposed issues instruction by consolidating claims or striking them due to a lack of evidence). We agree and find plaintiff has failed to establish an abuse of discretion or prejudice. The records shows plaintiff presented specific testimony from Dr. Boffa regarding the failure of PSG doctors to perform the testing set forth in the modified issues instruction. The remaining paragraphs of plaintiff's proposed instruction that raised general claims regarding the failure to diagnose an anastomotic leak, failure to properly assess or evaluate Henry, and improper discharge were effectively included within the more specific modified instructions given to the jury. Accordingly, we, again, find no error.

¶ 107                                III. CONCLUSION

¶ 108        For the reasons stated, we affirm the trial court's judgment.

¶ 109        Affirmed.